938 P.2d 59

**SWIFT TRANSPORTATION,**
Petitioner Employer,

**Diversified Insurance Company,**
Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,**

**Robert Lamadeleine, Respondent
Employee.**

No. 1 CA–IC 94–0184.

Court of Appeals of Arizona,
Division 1, Department D.

May 28, 1996.

Review Denied Nov. 19, 1996.

Teilborg, Sanders & Parks by Scott H. Houston, Phoenix, for Petitioner Employer and Carrier.

Anita R. Valainis, Chief Counsel Industrial Commission of Arizona, Phoenix, for Respondent.

Robert P. LaMadeleine, Lancaster, CA, in propria persona Respondent Employee.

OPINION

PATTERSON, Presiding Judge.

The sole issue raised in this special action review of an Industrial Commission award is whether the Administrative Law Judge ("ALJ") abused his discretion in determining the claimant's average monthly wage.

I. *FACTS AND PROCEDURAL
HISTORY*

On December 26, 1991, the respondent-employee ("claimant") was hired by the petitioner-employer, Swift Transportation, as a truck driver, and he was placed in a probationary-training status. While in training, he received a weekly salary of $250. When the training period concluded, the claimant was paid twenty cents per mile or a total of $645.96 for the period of regular employment consisting of March 2 through March 9, 1992.

The claimant sustained an industrial injury on March 9, 1992. On September 20, 1993, the carrier issued a notice terminating benefits effective August 21, 1993 with an unscheduled permanent disability. The claimant filed a request for a hearing.

The ALJ found that the claimant had a permanent disability, and because the claimant received a change in base salary, due to a

change in status beginning March 2, the ALJ calculated the average monthly wage from the period between March 2, 1992 and March 9, 1992. The ALJ took into account the claimant's average daily wages of $68.21 plus his anticipated earnings for loading and unloading and set the claimant's total monthly earnings at $2,100.

The petitioners filed a post-hearing memorandum arguing that the ALJ improperly calculated the claimant's average monthly wage. They contend that under Arizona caselaw, the entire thirty days prior to the industrial injury must be factored into the award determination. The ALJ, in a decision upon review, affirmed the award and stated:

> This is not a routine increase but a recognition by the employer that the applicant ceased his training capacity and became a regular driver which is more in the nature of a promotion. The injury sustained on March 9, should accurately reflect the applicant's earning capacity on the date of injury.

The petitioners then brought this special action. The claimant who is not represented by counsel did not file an answering brief, and this court set the case for decision on the basis of the record and the petitioner's brief. Although failure to file an answering brief may constitute "a confession of reversible error," *see, e.g., City of Phoenix v. Schooley*, 5 Ariz.App. 149, 150, 424 P.2d 191, 192 (1967), we exercise our discretion in this matter to address the novel legal issue presented. *Cf. Nydam v. Crawford*, 181 Ariz. 101, 101, 887 P.2d 631, 631 (App.1994)(expressing reluctance to reverse on an "implied confession of error" where the trial court correctly applied the law).

## II. *DISCUSSION*

 The petitioners argue that the ALJ was required to use the claimant's actual earnings for the thirty-day period prior to the industrial injury to determine the average monthly wage for the March 9, 1992 industrial injury. Specifically, they contend that the claimant's change in pay, which they argue is a routine wage increase, does not

justify a departure from the presumptive thirty-day wage base.

The basis for determining a claimant's average monthly wage is set forth in Arizona Revised Statutes Annotated ("A.R.S.") section 23–1041, which provides in relevant part:

> A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in the event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

> \* \* \* \* \* \*

> D. The term "monthly wage" means the average wage paid during and over the month in which the employee is killed or injured.

 Arizona cases that have interpreted the statute have held that the thirty-day period preceding the industrial injury is the presumptive wage base to determine a claimant's average monthly wage. *Floyd Hartshorn Plastering Co. v. Industrial Comm'n*, 16 Ariz.App. 498, 503–04, 494 P.2d 398, 403–04 (1972); *Elco Veterinary Supply v. Industrial Comm'n*, 137 Ariz. 46, 47–48, 668 P.2d 889, 890–91 (App.1983). Where, however, the thirty-day period does not represent the earning capacity of a claimant, the ALJ has discretion to look at a "reasonable period" beyond that given month to "allow consideration of pertinent factors." *Floyd Hartshorn*, 16 Ariz.App. at 505, 494 P.2d at 405; *Davis v. Industrial Comm'n*, 134 Ariz. 293, 296, 655 P.2d 1345, 1348 (App.1982).

The petitioners, citing *Southwest Restaurant*, argue that the circumstances in this case did not justify the ALJ's use of an "expanded wage base" to calculate the claimant's average monthly wage. 170 Ariz. 433, 435, 825 P.2d 958, 960 (App.1991)(justifications may include "seasonal employment, intermittent employment, and unrepresented wages during the month before the injury.") They specifically contend that the claimant's change in pay was a "routine wage increase," and that the ALJ abused his discretion in retroactively applying this wage increase to

the entire thirty days preceding the industrial injury.

The facts in this case are distinct from the line of cases cited by the petitioners. Here, the claimant was initially placed in training, was paid a weekly salary, and was required to drive with a trainer. The claimant's probationary training period ended when his supervisor determined that a trainer was no longer necessary. This change in status was reflected by the claimant's graduation to a wage based on the number of miles driven.

To use the probationary salary as the guide in determining the claimant's average monthly wage would grossly distort his "actual earning capacity." As stated by Professor Larson:

> The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life. This may sound like belaboring the obvious; but unless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensative theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis.

2 *Worker's Compensation Law* § 60.11(f) at 10–647–48 (1995).

The Maine Supreme Court decided this issue in *Fowler v. First National Stores, Inc.*, 416 A.2d 1258 (1980). In that case, the claimant was employed as a part-time clerk at the rate of $2.80 an hour from April 15, 1978 until September 16, 1978, at which time she was promoted to a full-time position of produce manager at a rate of $6.025 per hour. The claimant worked in this position one week before she sustained an industrial injury.

The Maine Worker's Compensation Commission ("Commission") computed the claimant's average weekly wage using the wage earned in both positions. *Fowler*, 416 A.2d at 1260, (*citing* 39 Me.Rev.Stat. Ann. ("M.R.S.A.") § 2(2)(B)) [1]. The *Fowler* Court held that in determining future earning capacity pursuant to M.R.S.A. § 2(2)(B), the Commission must generally exclude "wages earned and weeks worked in a former occupation even if this occupation was with the same employer." *Fowler*, 416 A.2d at 1261. The claimant had acquired a new occupation with her employer, the Court reasoned, because the increased wage demonstrated that the new "responsibilities were also significantly more valuable to her employer than those she had previously undertaken." *Id.*

Similarly, a mechanical application of the claimant's average wage for the thirty days preceding his injury misconstrues the theory of the worker's compensation laws which emphasize what the employee has actually earned for his labor. *See Harvey Auto Supply v. Industrial Comm'n*, 25 Ariz.App. 274, 276, 542 P.2d 1154, 1156 (1975). The training salary is not what the claimant earned for his labor. Rather, it was a reflection of the company's training policy for newly hired truck drivers. The claimant's satisfactory completion of the training program was evidenced by his new status, increased responsibility and new wage, which should control the application of the average monthly wage formula.

### III. *CONCLUSION*

For the foregoing reasons, the ALJ properly determined that the claimant's average monthly wage should reflect what he was actually earning at the time of the injury and that his training wage was properly excluded because it presents a distorted basis upon which to make a determination of future

---

1. 39 M.R.S.A. § 2(2)(B), provides in relevant part:

> In case such employment or occupation has not so continued for said 200 full·working days, the "average weekly wage, earnings or salary" shall be determined by dividing the entire amount of wages or salary earned therein by the injured employee during said immediately preceding year, by the total number of weeks, any part of which the employee worked, during the same period.

earning capacity. We therefore affirm the award.

GARBARINO and KLEINSCHMIDT, JJ., concur.