989 P.2d 152

**Carl LOWRY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,**

**City of Coolidge, Respondent Employer,**

**State Compensation Fund,
Respondent Carrier.**

**No. CV–98–0480–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 3, 1999.
As Corrected Dec. 22, 1999.

Taylor & Associates By Roger A. Schwartz, Phoenix, Attorney for Petitioner.

The Industrial Commission of Arizona, Anita R. Valainis, Phoenix, Chief Counsel Attorney for Respondent.

State Compensation Fund James F. Crane, Chief Counsel By W. Smith Michael, Jr., Assistant Chief Counsel and Robert A. Schuler, Tucson, Attorneys for Respondents Employer and Carrier.

## OPINION

McGREGOR, Justice.

### I.

¶ 1 We are asked to decide whether, for purposes of determining workers' compensation disability benefits, an employee's average monthly wage includes earnings from concurrent employment held within the thirty days prior to, but not on the date of, an on-the-job injury.

¶ 2 During 1992, petitioner Carl Lowry worked for the City of Coolidge as a building inspector and also as a volunteer firefighter. His pay as a firefighter consisted of approximately one-tenth his wages as a building inspector. The City terminated the building inspector position, and Lowry's employment in that job, on August 19, 1992. Four days later, Lowry suffered an injury while working as a firefighter. Although the parties agreed that Lowry was eligible to recover workers' compensation benefits, they disagreed as to how to calculate his wage base. The administrative law judge, rejecting Lowry's argument that wages from both jobs should be included in the calculation, established his average monthly wage using only the wages for the firefighter position that he held on the date of injury. The court of appeals affirmed, and we granted review. We exercise jurisdiction pursuant to Arizona Constitution, article VI, section 5(3), Arizona Revised Statutes Annotated (A.R.S.) § 12-120.24, and Arizona Rule of Civil Appellate Procedure 23.

### II.

¶ 3 The Arizona Workers' Compensation Act, A.R.S. §§ 23–901 to 23–1091 (West 1995 & West Supp.1998) (the Act), defines an injured worker's monthly wage for the purpose of determining disability benefits. *See id.* § 23–1041. Subsection A of section 23–1041 provides in relevant part that employees "shall receive the compensation fixed in this chapter on the basis of such employee's *average monthly wage at the time of injury.*" *Id.* (emphasis added). The court of appeals relied upon that emphasized language to conclude that only wages from employment held "on the *date* of injury" should be used to determine an average monthly salary. *Lowry v. Industrial Comm'n,* No. 1 CA–IC 96–0143 (App. Sept. 22, 1998) (emphasis added). Lowry, in contrast, relies upon subsection D of the statute, which defines "monthly wage" as "the average wage paid *during and over the month* in which the employee is killed or injured," to argue that all wages received during the month of injury should be included to determine his average wage. A.R.S. § 23–1041.D (emphasis added). He asserts that interpretation is consistent with the spirit and purpose behind the workers' compensation provisions and will supply an appropriate basis to fairly set his disability payments.

### A.

¶ 4 The issue raised essentially requires that we determine whether the legislature intended that the worker's average monthly wage be calculated by considering only his or her wages for the job held on the date of injury, or wages from all jobs held within the month preceding the injury. We begin our analysis with the express language of the Act.

¶ 5 The statutory definition of monthly wage, with its reference to a worker's average wage during the month of injury, has remained unchanged from its first appearance, *compare* A.R.S. § 23–1041.D (1995) *with* A.R.S. § 1438 (1928), and supports Lowry's argument that the administrative law judge should have considered wages paid to him during the month preceding his injury. In *Wiley v. Industrial Commission,* 174 Ariz. 94, 98, 847 P.2d 595, 599 (1993), we considered this language and concluded that the legislature's reference to an "average wage paid during and over the month in

which the employee is killed or injured," A.R.S. § 23–1041.D, contemplates including wages accrued from more than a single employer. *Wiley*, however, involved an employee who held two positions at the time of his injury and, therefore, did not implicate the final phrase of subsection A of section 23–1041. That subsection, by referring to an employee's average monthly wage at the time of injury, supports the State Compensation Fund's (the Fund) argument that only concurrent employment held on the date of injury may be considered in setting the pre-injury wage. Because the language of the statute is ambiguous as to whether "average wage" includes wages paid for concurrent employment that ends before the date of injury, but within the month of injury, our function is to interpret the statute. *See Senor T's Restaurant v. Industrial Comm'n*, 131 Ariz. 360, 362, 641 P.2d 848, 850 (1982). "Statutes which are ambiguous must be construed in view of the purposes they are intended to accomplish and the evils they are designed to remedy." *Id.* at 363, 641 P.2d at 851 (citing *State v. Berry*, 101 Ariz. 310, 312, 419 P.2d 337, 339 (1966)). Therefore, we look to the goals of the Act and the evils it was designed to remedy for the foundation of our decision. *See Dietz v. General Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991).

### B.

¶ 6 The primary purpose of the Act is to compensate an employee for wages he would have earned without his injury and, thereby, prevent him from becoming a public charge during his disability. *See Stephens v. Textron, Inc.*, 127 Ariz. 227, 230, 619 P.2d 736, 739 (1980). In *Wiley*, we recognized:

> The Arizona Constitution commands that the Act be a "just and humane compensation law" and relieve workers and their dependents from "burdensome, expensive and litigious remedies." Ariz. Const. art. 18, § 8. As a matter of statutory interpretation, we have long held that [t]he goal of the Act is to determine a realistic pre-injury wage base which can serve as a standard of comparison with the post-injury earning capacity of the injured worker; the emphasis in setting

a worker's average monthly wage is on what the employee *has actually earned* for his labors.

174 Ariz. at 99–100, 847 P.2d at 600–601 (quoting *Senor T's*, 131 Ariz. at 363, 641 P.2d at 851) (emphasis in original). Therefore, to be consistent with the constitutional command and statutory goal, the wage base should realistically reflect a claimant's actual monthly earning capacity, *see Hershkowitz v. Arizona Highway Dep't*, 56 Ariz. 494, 498, 109 P.2d 46, 48 (1941), *overruled in part by Ross v. Industrial Comm'n*, 82 Ariz. 9, 307 P.2d 612 (1957), and the Act should be construed broadly to effectuate this goal. *See Wiley*, 174 Ariz. at 100, 847 P.2d at 601.

¶ 7 To further that goal, we reversed Arizona's "concurrent dissimilar employment rule" in *Wiley* and held the Act does not prohibit a wage calculation that includes wages from both similar and dissimilar concurrent employment. *Id.* at 104, 847 P.2d at 605. Importantly, we returned to the purpose of the Act and the spirit of the law as the basis for our decision. We stated that the inclusion of wages from dissimilar employment "focuses on reality—what the employee *actually earned*—not on some artificial distinction that the language of the Act does not compel." *Id.* at 100, 847 P.2d at 601 (citation omitted) (emphasis added); *see also Southwest Restaurant Sys. v. Industrial Comm'n*, 170 Ariz. 433, 436, 825 P.2d 958, 961 (App.1991) (holding that even though the employee intended to take an unpaid leave of absence later that month to meet the social security minimum wage, her wages from the thirty days prior to the injury were the proper wage base because they represented her *actual* earnings).

¶ 8 Our analysis in *Wiley* extends naturally to the situation here. To be consistent with the goals of the Act, the focus in setting Lowry's wage base must be on reality—in this case, the wages Lowry actually earned prior to his injury.

¶ 9 Lowry held concurrent employment as a building inspector and as a firefighter for at least five months prior to his termination. He was terminated from the building inspector position only four days before the injury. Because Lowry realistically

earned more than his wages as a volunteer firefighter indicate, his lower wages from the firefighter position alone cannot provide an accurate measure of his actual pre-injury earning capacity. Fully compensating him for his real loss of earning capacity, therefore, requires considering also the income he *actually earned* as a building inspector during the month of his injury.

¶ 10 Our conclusion that "average monthly wage" can include wages earned from employment held within the thirty days prior to injury also is consistent with prior decisions, which have held that the statutory language establishes a presumptive thirty-day wage period, *see Swift Transp. v. Industrial Comm'n,* 189 Ariz. 10, 11, 938 P.2d 59, 60 (App.1996), and that administrative law judges have discretion to apply an expanded wage base when the presumptive period does not realistically reflect a claimant's earning capacity. *See Davis v. Industrial Comm'n,* 134 Ariz. 293, 296, 655 P.2d 1345, 1348 (1982); *Elco Vet. Supply v. Industrial Comm'n,* 137 Ariz. 46, 47–48, 668 P.2d 889, 890–91 (App. 1983), *approved by* 137 Ariz. 45, 668 P.2d 888 (1983). As we recognized in *Davis,* seasonal employment, intermittent employment, and temporarily inflated wages can all provide justification for using an expanded wage base when necessary to measure an individual's pre-injury earning capacity. 134 Ariz. at 296, 655 P.2d at 1348. Because the factors that determine an individual's realistic pre-injury earning capacity can vary, our holding today is not intended to establish a "bright line" thirty-day rule or to limit the exercise of discretion by administrative law judges. Rather, we adopt a presumptive rule that, consistent with the direction of A.R.S. § 23–1041, looks first to wages earned during the thirty-day period preceding injury. But, because the purpose of the Act remains to allow compensation based upon an employee's actual earnings, the judge retains discretion to consider those factors that affect and measure that value.

¶ 11 We reject the Fund's argument that applying the presumptive thirty-day period to measure Lowry's actual earnings requires speculation about his future earning potential. To the contrary, this approach empha-sizes reliance upon actual wages he has already earned to create the wage base that most accurately reflects his true average monthly wage. Our interpretation of the statute permits the administrative law judge to calculate the wage base from numbers easily obtained, involving no extrapolation or speculation about unearned wages.

¶ 12 For these reasons, we hold that Lowry's average monthly wage includes wages he earned from both of his jobs, even though he was not concurrently employed on the date of injury.

### C.

¶ 13 In urging us to reject Lowry's arguments, the Fund has raised a number of other concerns, which we address in turn. First, the Fund argues that reversing the court of appeals' decision will lead the state into uncharted territory and subject workers' compensation carriers to unlimited new litigation. The Fund argues that no other state has held a worker's wage calculation can include wages from concurrent employment that ended prior to the date of injury. Our primary concern in interpreting the Act is to advance the goals of Arizona's workers' compensation scheme, rather than to follow the lead of other jurisdictions. Nevertheless, we note that several jurisdictions have reached similar conclusions. In *Jacobs v. Industrial Commission,* 269 Ill.App.3d 444, 206 Ill.Dec. 945, 646 N.E.2d 312, 315 (1995), the court concluded that a claimant's wage calculation should include earnings from both his sheet metal worker and maintenance positions, even though he was not actually employed as a sheet metal worker on the date of injury. The court reasoned that because the claimant was a unionized sheet metal worker, and thus subject to recall, he likely would have been re-employed in that capacity after the injury. *See id.* Likewise, in *Gomez v. Murdoch,* 520 So.2d 600, 601 (Fla.Dist.Ct.App.1987), a Florida claimant recovered wages from two positions, even though she was injured while working in only one. The claimant, a publicist, routinely took a two-month leave of absence to train horses and sustained her injury in the second job. The court held that because it was merely fortuitous that the

injury occurred while she held only one job, she was considered concurrently employed for purposes of calculating the wage base. *See id.*; *see also Kinder v. Murray & Sons Constr. Co., Inc.*, 264 Kan. 484, 957 P.2d 488, 496 (1998) (holding the unique nature of a concrete worker's trade, which usually involved work on an as-needed basis for multiple employers, allowed the claimant to recover wages from past employment, even though he had a contractual agreement with only one employer on the date of injury); *Sylva's Case*, 46 Mass.App.Ct. 679, 709 N.E.2d 439, 443–44 (1999) (holding that an "on call" union worker was entitled to wages from both concurrent positions, despite the fact he was only working at one on the date of injury), *review denied*, 430 Mass. 1103, 714 N.E.2d 354 (1999).

¶ 14 Although the cases summarized above can be distinguished on the basis that each claimant had some kind of continuing relationship with the first employer, their rationale and analysis inform the decision we reach here. Therefore, we join other courts that have held present employment in multiple positions at the time of injury is not a prerequisite to considering wages from all to set a pre-injury wage base.

¶ 15 Second, the Fund argues that including prior concurrent employment in the wage calculation will unfairly burden workers' compensation carriers that negotiate insurance premiums based on a single job. We specifically considered and rejected this argument in *Wiley*:

[F]airness to the employee and fairness to the employer or carrier are not opposite sides of the same coin.

To this one employee, this one loss is everything—[the employee] has nothing against which to offset it. To the employer, and even more to the carrier, this is just one case among many. The rule operates impartially in both directions. Today this employer-carrier may be saddled with a slight extra cost; tomorrow the positions may be reversed, and the employer-carrier will be completely relieved of the cost of an injury to one of its employees in a concurrent-

employment situation, when it happens to be the other employment in which the injury occurs. This is the essence of the concept of spreading the risk in a system like workmen's compensation.

*Wiley*, 174 Ariz. at 101, 847 P.2d at 602 (quoting 2 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 60.31(c) at 10–751 (1992)) (alteration in original).

¶ 16 Lowry finds himself in the same position as did Wiley, and the basis for our holding in *Wiley* applies with equal force here. "[T]o hold the employer liable only for the wages he has paid results in an injustice to the employee and seems contrary to the intent and the spirit of the [Act]." *Wheeler v. Industrial Comm'n*, 22 Ariz.App. 488, 490, 528 P.2d 874, 876 (1975), *quoted in Wiley*, 174 Ariz. at 101, 847 P.2d at 602.

¶ 17 Third, the Fund argues that claimants will now return to the distant past to find higher paying jobs on which to base their pre-injury wage calculation. Our holding, however, does not allow claimants unlimited discretion to pick and choose prior jobs to provide a basis for calculating their average monthly wage. Although concurrent employment on the date of injury is not a prerequisite to recovery, absent unusual circumstances, the claimant must have simultaneously held multiple jobs within the presumptive thirty-day period preceding the injury.

### III.

¶ 18 Finally, we address the issue of retroactivity. "In civil actions, Arizona law has always been 'that unless otherwise stated, a court opinion operates retroactively as well as prospectively.'" *Brannigan v. Raybuck*, 136 Ariz. 513, 520, 667 P.2d 213, 220 (1983) (quoting *Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 435, 641 P.2d 1275, 1279 (1982)). This concern again mirrors a question we considered in *Wiley*. As we stated there, we presume retroactivity of today's holding, yet balance that application against the following factors:

1. Whether the decision establishes a new legal principle by overruling clear and

reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Whether retroactive application will further or retard operation of the new rule, considering the prior history, purpose, and effect of the new rule;

3. Whether retroactive application will produce substantially inequitable results.

*Wiley,* 174 Ariz. at 104, 847 P.2d at 605 (quoting *Fain Land & Cattle Co. v. Hassell,* 163 Ariz. 587, 596, 790 P.2d 242, 251 (1990)). *Our decision today does not implicate the first two factors.* First, we have not over- turned long-settled precedent, nor created an unforeshadowed result. Instead, we have applied our decision in *Wiley* to a closely analogous situation. Second, our decision does not frustrate the purpose of the Act. To the contrary, our holding effectuates the Act's purpose and protects claimants' inter- ests. Because this decision invokes the third factor, however, we hold it only applies pro- spectively.

¶ 19 In *Wiley,* we concluded that allow- ing claimants "who were injured in the past thirty years to reopen their wage determina- tion would result in substantial inequities. 'Numerous defendants would be subject to [additional] claims in cases they previously believed had been finalized.' " *Id.* (quoting *Villareal v. State Dep't of Transp.,* 160 Ariz. 474, 480, 774 P.2d 213, 219 (1989)) (alteration in original). That same concern applies here. Therefore, our holding today should not be construed to allow claimants to re- open claims for past injuries. It applies only to claims that have not yet become final and does not apply to awards in which the time for appeal has expired.

### IV.

¶ 20 For the foregoing reasons, we vacate the court of appeals' opinion, set aside the award, and remand the matter for proceed- ings consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice

Chief Justice, STANLEY G. FELDMAN, Justice, and FREDERICK J. MARTONE, Justice.