146 P.3d 76

Jackquelynne R. MORSE, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

United Parcel Service, Respondent Employer,

Liberty Insurance Group, Respondent Carrier.

No. 1 CA–IC 06–0011.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 7, 2006.

Jerome, Gibson, Stewart, Friedman, Stevenson, Engle & Runbeck, P.C. By James L. Stevenson, Phoenix, Attorneys for Petitioner Employee.

Laura L. McGrory, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Cross & Lieberman, P.A. By Lawrence H. Lieberman, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

WINTHROP, Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona ("ICA") Award and Decision Upon Review establish-ing an average monthly wage. One issue is presented on appeal: whether the administrative law judge ("ALJ") erred by failing to consider the petitioner employee's ("Claimant's") prospective wages from her new employer, for whom she had not yet begun to work, in setting the average monthly wage. Because we find the Award and Decision Upon Review supported by the law and evidence, we affirm.

## I. JURISDICTION AND STANDARD OF REVIEW

¶ 2 This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(2) (2003) and 23–951(A) (1995), and Rule 10 of the Arizona Rules of Procedure for Special Actions. Although we deferentially review the reasonably supported factual findings of the ALJ, we independently review his legal conclusions. *See, e.g., PFS v. Indus. Comm'n,* 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997).

## II. FACTUAL AND PROCEDURAL HISTORY

¶ 3 Claimant was employed part time by the respondent employer, United Parcel Service ("UPS"), as a ramp agent loading and unloading cargo planes. She was also attending Estrella Mountain Community College as a full-time student. On April 14, 2005, she sustained a crush injury to her left hand.

¶ 4 Claimant filed a workers' compensation claim, which was accepted for benefits. The ICA issued a notice of average monthly wage in the amount of $490.20, and Claimant timely requested a hearing. Claimant asserted that the notice understated her average monthly wage because, on the date of her industrial injury, she was scheduled to begin a second job with Forward Air, another air freight carrier, and eventually work more hours and for a higher hourly wage than at her UPS job.

¶ 5 The uncontested facts developed at hearing were as follows: Claimant worked at UPS approximately twenty hours per week and made $8.50 an hour. She had performed

the same work for several years. Because Claimant wanted to work more hours, her UPS supervisor referred her to Forward Air. After an interview and various tests, Claimant was hired by Forward Air. She was scheduled to begin work on April 14, 2005, at 5:00 p.m., but she was injured at UPS earlier that same day. Initially, Claimant planned to work sixteen hours a week at Forward Air, making $9.50 an hour. However, after about three weeks, when school ended, Claimant planned to work forty hours a week during the summer for Forward Air and to continue working part time for UPS. Approximately one month after her industrial injury at UPS, Forward Air filled her position.

¶ 6 In his Award, the ALJ noted that this case presented an issue of first impression, i.e., utilizing prospective wages in the average monthly wage calculation. Although he found Claimant's testimony credible as to her new position at Forward Air, he recognized that Arizona law generally focuses on the thirty days before the industrial injury when setting the average monthly wage. For that reason, and concluding that the emphasis should be on actual wages earned rather than on "speculative" wages in determining earning capacity, the ALJ declined to consider Claimant's prospective wages at Forward Air in his average monthly wage calculation. The ALJ summarily affirmed his Award on administrative review, and Claimant brought this special action.

### III. ANALYSIS

¶ 7 The computation of the average monthly wage is discussed in A.R.S. § 23–1041 (Supp.2006).[1] Section 23–1041 provides in pertinent part as follows: [2]

A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment ... shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

. . . .

F. In this section "monthly wage" means the average wage paid during and over the month in which the employee is killed or injured.

¶ 8 Wages earned during the thirty days preceding an industrial injury are the presumptive average monthly wage, but the ALJ has broad discretion to use an expanded wage base when the presumptive base does not realistically reflect earning capacity. See Davis v. Indus. Comm'n, 134 Ariz. 293, 296, 655 P.2d 1345, 1348 (App.1982). Justifications for using an expanded wage base include intermittent employment, seasonal employment, or unrepresentative wages during the month before the injury. See Elco Veterinary Supply v. Indus. Comm'n, 137 Ariz. 46, 48, 668 P.2d 889, 891 (App.1983).

¶ 9 A claimant has the burden of establishing the elements of the average monthly wage. Zapien v. Indus. Comm'n, 12 Ariz.App. 334, 336, 470 P.2d 482, 484 (1970). The emphasis in setting an average monthly wage is on what the employee has actually earned for his or her labors. See Harvey Auto Supply, Inc. v. Indus. Comm'n, 25 Ariz.App. 274, 276, 542 P.2d 1154, 1156 (1975). In any given case, the ALJ has discretion to choose the appropriate formula for calculating the average monthly wage. See, e.g., State Comp. Fund v. Arnold, 20 Ariz.App. 62, 63, 510 P.2d 61, 62 (1973).

¶ 10 In this case, Claimant argues that she had concurrent earnings, from UPS and Forward Air, which the ALJ should have considered when he set her average monthly wage. Specifically, she argues that, despite the fact she had not yet begun to work at Forward Air at the time of her industrial injury, those prospective wages should be utilized because they more accurately reflect her "probable future earning capacity." See Swift Transp. v. Indus. Comm'n, 189 Ariz. 10, 12, 938 P.2d 59, 61 (App.1996) (quoting 2 Arthur Larson, Larson's Workers' Compen-

---

1. We cite the current version of the applicable statutes as no revisions material to this opinion have occurred.

2. A thorough legislative history of the average monthly wage statute can be found in Floyd Hartshorn Plastering Co. v. Industrial Commission, 16 Ariz.App. 498, 494 P.2d 398 (1972).

*sation Law* § 60.11(f), at 10–647 to–648 (1995)).[3]

¶ 11 In *Swift*, this court considered the computation of a truck driver's average monthly wage. 189 Ariz. at 10, 938 P.2d at 59. After the driver was hired, he was placed in a probationary training status and received a weekly salary of $250.00. *Id.* After his probationary training period ended, the driver began to earn twenty cents per mile. *Id.* During the one week between the end of his training period and his industrial injury, the driver earned $645.96. *Id.* In setting the driver's average monthly wage, the ALJ used the driver's regular salary instead of his training period salary. *Id.* at 10–11, 938 P.2d at 59–60.

¶ 12 On appeal, the employer argued that the ALJ was required to calculate the driver's average monthly wage by using his actual earnings during the thirty-day period before his industrial injury. *Id.* at 11, 938 P.2d at 60. This court rejected that argument and affirmed the ALJ's award. *Id.* at 12–13, 938 P.2d at 61–62. We recognized that the thirty days preceding the industrial injury are only the presumptive wage base, and it is within the ALJ's discretion to use a different period when those thirty days do not accurately represent a claimant's earning capacity. *Id.* at 11, 938 P.2d at 60. This court held that "the ALJ properly determined that the claimant's average monthly wage *should reflect what he was actually earning* at the time of the injury and that his training wage was properly excluded because it presents a distorted basis upon which to make a determination of future earning capacity." *Id.* at 12–13, 938 P.2d at 61–62 (emphasis added).[4]

¶ 13 Claimant also relies on the Arizona Supreme Court's opinion in *Lowry v. Industrial Commission,* 195 Ariz. 398, 989 P.2d 152 (1999), to support her position. In *Low-*

*ry,* our supreme court considered whether a claimant's average monthly wage should include earnings from concurrent employment held within the thirty days before, but not on the date of, an industrial injury. *Id.* at 399, ¶ 1, 989 P.2d at 153. Lowry, the claimant, had been employed as both a building inspector and a volunteer firefighter. *Id.* at ¶ 2, 989 P.2d 152. However, the city terminated his position as a building inspector. Four days later, Lowry sustained an industrial injury while working as a firefighter. *Id.*

¶ 14 In calculating Lowry's average monthly wage, the ALJ refused to include his wages as a building inspector because he did not hold that position at the time of his injury. *Id.* Instead, the ALJ relied solely on Lowry's wages as a firefighter. *Id.* This court affirmed the ALJ's award, but on review, the supreme court reversed and held that the ALJ should have considered Lowry's earnings from both positions in the average monthly wage calculation:

> [W]e adopt a presumptive rule that, consistent with the direction of A.R.S. § 23–1041, looks first to wages earned during the thirty-day period preceding injury. But, because the purpose of the Act remains to allow compensation based upon an employee's actual earnings, the judge retains discretion to consider those factors that affect and measure that value.
>
> We reject the Fund's argument that applying the presumptive thirty-day period to measure Lowry's actual earnings requires speculation about his future earning potential. To the contrary, *this approach emphasizes reliance upon actual wages he has already earned to create the wage base that most accurately reflects his true average monthly wage. Our interpretation of the statute permits the administrative law*

---

**3.** The current treatise citation is 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law ("Larson")* § 93.01[1][g], at 93–18 to–19 (Supp.2006).

**4.** Although not specifically mentioned by the parties, it is widely recognized that apprentices, students, and other inexperienced workers often receive relatively meager compensation that is not an accurate reflection of what they will be expected to earn once they reach majority or

finish their training period. For that reason, under the Arizona Workers' Compensation Act, they may be entitled to have their average monthly wage determined based on what they would be expected to earn at the age of majority or at the conclusion of their training period. *See generally Arizona Workers' Compensation Handbook* § 7.3.4, at 7–15 to–16 (Ray J. Davis et al. eds., 1992 & Supp.2005); *Larson* § 93.01[2][c] at 93–26 to–27.

*judge to calculate the wage base from numbers easily obtained, involving no extrapolation or speculation about unearned wages.*

For these reasons, we hold that Lowry's average monthly wage includes wages he earned from both of his jobs, even though he was not concurrently employed on the date of injury.

*Id.* at 401, ¶¶ 10–12, 989 P.2d at 155 (emphasis added).

¶ 15 We disagree that *Lowry* supports Claimant's position in this case. In *Lowry,* the focus was on wages earned during the thirty-day period before the industrial injury, not on wages potentially available during a post-injury period. Although our supreme court emphasized that concurrent employment on the date of injury was not a prerequisite to utilizing all of the wages from the thirty days before injury, absent unusual circumstances, a claimant must have simultaneously held and earned wages from both jobs within the presumptive thirty-day pre-injury period. *See id.* at 402, ¶ 17, 989 P.2d at 156.

¶ 16 In this case, based on the statutory language and the guidance of our supreme court, we find that under these facts, the projected earnings from a job Claimant has not yet performed are too speculative a basis on which to set the average monthly wage. For that reason, we affirm the Award and Decision Upon Review.

CONCURRING: JON W. THOMPSON, Presiding Judge and MAURICE PORTLEY, Judge.