307 P.3d 1030

**Daniel D. BERRYHILL, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Wal–Mart Stores, Inc., Respondent Employer,**

**Wal–Mart Associates Inc. c/o Claims Mgt Inc., Respondent Carrier.**

**No. 1 CA–IC 12–0065.**

Court of Appeals of Arizona, Division 1, Department C.

Aug. 29, 2013.

Law Office of Eric C. Awerkamp By Eric C. Awerkamp, Mesa, Attorneys for Petitioner Employee.

The Industrial Commission of Arizona By Andrew Wade, Chief Counsel, Phoenix, Attorney for Respondent.

Hoffman Kelley LLP By Linda C. Day, Scottsdale, Attorneys for Respondents Employer and Carrier.

## OPINION

JOHNSEN, Chief Judge.

¶ 1 We address in this statutory special action the average monthly wage of a workers' compensation claimant who was injured at one job just after he was hired into another position he took to supplement his income from the first. Because we conclude the Administrative Law Judge ("ALJ") erred by failing to consider what the claimant earned at the second job following the injury, we set aside the award.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Daniel D. Berryhill worked as a tire and lube technician at Wal–Mart Stores, Inc., earning $9.60 an hour. Seeking to supplement his income from Wal–Mart, Berryhill interviewed with Siteworks Landscape Development on October 16, 2009, and that day accepted an offer from Siteworks to work 16 hours a week at $15.63 per hour. That same day, October 16, Siteworks sent Berryhill for a drug screen and directed him to report to work. When he appeared for work (still on October 16), he received work keys and a tour of work locations and was trained about his work responsibilities. After Berryhill was trained, Siteworks told him to return to work on October 20.

¶ 3 On October 19, Berryhill injured himself while working at Wal–Mart. He nevertheless appeared for work at Siteworks the following day and continued to work there part-time for at least several weeks thereafter. Siteworks, however, did not pay Berry-

hill for work performed on October 16. According to the parties' stipulation:

> Nonpayment by Siteworks for [October 16] was not by agreement, it was simply what happened. Mr. Berryhill did not want to create contention with the new employer and did not press the issue regarding nonpayment of wages for October 16, 2009.

¶ 4 Berryhill filed a workers' compensation claim arising from the injury he suffered at Wal–Mart. The claim was accepted and then eventually closed, and the Industrial Commission of Arizona ("ICA") issued a notice of average monthly wage in the amount of $1,759, based solely on Berryhill's earnings at Wal–Mart. Berryhill requested a hearing, arguing that in setting his average monthly wage, the ICA should have considered his Siteworks wages along with his Wal–Mart wages. Ruling based on stipulated facts, the ALJ agreed with the ICA that Berryhill's average monthly wage should be calculated based solely on his earnings at Wal–Mart. The ALJ reasoned that Berryhill's earnings from Siteworks were not relevant because that "employment did not begin" before the injury, nor did he receive any wages from Siteworks until after he was injured.

¶ 5 Berryhill requested administrative review, and the ALJ affirmed the award. We have jurisdiction of Berryhill's statutory special action pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(2) (West 2013), 23–951(A) (West 2013) and Arizona Rule of Procedure for Special Actions 10.[1]

## DISCUSSION

■ ¶ 6 The determination of a claimant's average monthly wage is governed by A.R.S. § 23–1041 (West 2013), which provides in pertinent part:

1. Absent material revision after the relevant date, we cite a statute's current version.

2. We review the interpretation of statutes *de novo*. *McCurry v. Indus. Comm'n*, 228 Ariz. 1, 1, ¶ 2, 261 P.3d 776, 776 (App.2011).

3. We quoted from what is now 5 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 93.01[1][g], at 93–19 (Supp.2012): "The entire objective of wage calculation is to

> A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment ... shall receive the compensation fixed in this chapter on the basis of the employee's average monthly wage at the time of injury.
>
> \*　　\*　　\*
>
> G. For the purposes of this section, "monthly wage" means the average wage paid during and over the month in which the employee is killed or injured.

■ ¶ 7 Construing subpart (G) of the statute, Arizona courts have held that a worker's average monthly wage is presumed to be the income actually earned during the 30 days prior to the injury. *See, e.g., Lowry v. Indus. Comm'n*, 195 Ariz. 398, 400–01, ¶¶ 5, 10, 989 P.2d 152, 154–55 (1999); *Swift Transp. v. Indus. Comm'n*, 189 Ariz. 10, 11, 938 P.2d 59, 60 (App.1996).[2] But the presumption does not always apply: "Where ... the thirty-day period does not represent the earning capacity of a claimant, the ALJ has discretion to look at a 'reasonable period' beyond the given month to 'allow consideration of pertinent factors.' " *Id.*

¶ 8 The claimant in *Swift*, for example, had been promoted from probationary status near the end of the 30–day period preceding his injury. After the ALJ calculated the claimant's average monthly wage based on the higher wage rate he received after the promotion, the employer protested that the ruling did not reflect what the claimant actually had been paid during the 30 days before the injury. *Id.* We noted that use of the probationary wage rate would distort the claimant's actual earning capacity and held that the ALJ properly disregarded the lower rate in determining actual earning capacity pursuant to § 23–1041(G). *Id.* at 12, 938 P.2d at 61.[3]

arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings.... [U]nless the elementary guiding principle is kept constantly in mind while dealing with wage calculation, there may be a temptation to lapse into the fallacy of supposing that compensative theory is necessarily satisfied when a mechanical repre-

¶ 9 When a claimant has two concurrent jobs at the time he or she is injured, earnings from both positions typically are aggregated to establish the average monthly wage. *Wiley v. Indus. Comm'n,* 174 Ariz. 94, 104, 847 P.2d 595, 605 (1993) (addressing "wages from concurrent dissimilar employment"). The claimant has the burden of establishing concurrent employment and earnings on the date of injury. *See, e.g., Zapien v. Indus. Comm'n,* 12 Ariz.App. 334, 336, 470 P.2d 482, 484 (1970).

¶ 10 There is no bright-line rule for how to calculate average monthly earnings in a concurrent-job situation, however. *See Lowry,* 195 Ariz. at 401, ¶¶ 10–11, 989 P.2d at 155. We construe A.R.S. § 23–1041 "in view of the purposes [it is] intended to accomplish and the evils [it is] designed to remedy," mindful that "[t]he primary purpose ... is to compensate an employee for wages he would have earned without his injury and, thereby, prevent him from becoming a public charge during his disability." *Id.* at 400, ¶¶ 5, 6, 989 P.2d at 154. "[T]he wage base should realistically reflect a claimant's actual monthly earning capacity." *Id.* at 400, ¶ 6, 989 P.2d at 154.

¶ 11 In *Lowry,* the claimant worked both as a city building inspector and a volunteer firefighter; as a building inspector, he earned ten times what he earned as a firefighter. *Id.* at 399, ¶ 2, 989 P.2d at 153. Four days after he was laid off from his job as a building inspector, he sustained injury while working as a firefighter. *Id.* Citing subpart (G) of § 23–1041, the supreme court noted the legislature defined "monthly wage" as "the average wage paid during and over the month in which the employee is killed or injured." *Id.* at 399, ¶ 5, 989 P.2d at 153. The court held that even though the claimant was no longer working as a building inspector at the time he was injured, the wages he earned from both jobs during the month before his injury should be considered in establishing his average monthly wage. The court explained:

sentation of this claimant's own earnings in some arbitrary past period has been used as a wage

Because Lowry realistically earned more than his wages as a volunteer firefighter indicate, his lower wages from the firefighter position alone cannot provide an accurate measure of his actual pre-injury earning capacity. Fully compensating him for his real loss of earning capacity, therefore, requires considering also the income he *actually earned* as a building inspector during the month of his injury.

*Id.* at 400–01, ¶ 9, 989 P.2d at 154–55.

¶ 12 According to the stipulated facts in this case, Siteworks asked Berryhill to report to work on October 16, and he did so. It gave him "work keys," trained him and gave him a "tour of work locations," all on October 16. Although Wal–Mart argues that Berryhill "performed no wage earning activities" for Siteworks on October 16, the only conclusion to be drawn from these stipulated facts is that Berryhill had been hired by Siteworks as of October 16, three days before he was injured at Wal–Mart.

¶ 13 Wal–Mart argues, however, that the ALJ correctly disregarded the Siteworks job because Berryhill had not earned any wages from Siteworks before he was injured at Wal–Mart. But the record contains detailed evidence of what Siteworks paid Berryhill for work he performed during the 30 days following the injury at Wal–Mart. *See* § 23–1041(G). *Lowry* teaches that in a case such as this, the ALJ errs by disregarding wages the claimant has earned from a concurrent job within a month of the injury simply because he was not being paid at the time of the injury. 195 Ariz. at 401, ¶ 12, 989 P.2d at 155. Although the claimant in *Lowry* offered proof of wages earned from the concurrent job during the 30 days before the injury, given the directive in § 23–1041(G) to consider "wages paid during and over the month" of the injury, we hold the same principle applies to Berryhill's proof of wages earned from Siteworks during the 30 days following his injury.

¶ 14 Wal–Mart cites *Morse v. Industrial Commission,* 213 Ariz. 575, 146 P.3d 76 (App. 2006), in arguing that because Siteworks did

basis." *Id.*

not pay Berryhill for October 16, what he earned from Siteworks after the injury was "prospective," and prospective wages are not to be considered in determining average monthly wage.

¶ 15 In *Morse*, the claimant was injured at her first place of employment the very day "she was scheduled to begin a second job" with another employer. 213 Ariz. at 576, ¶ 4, 146 P.3d at 77. Citing *Lowry*'s reliance on "actual wages ... already earned" to determine average monthly wage, *id.* at 578, ¶ 14, 146 P.3d at 79, we concluded that "the projected earnings from a job Claimant has not yet performed are too speculative a basis on which to set the average monthly wage," *id.* at 579, ¶ 16, 146 P.3d at 80.

¶ 16 We disagree with Wal–Mart's contention that *Morse* disposes of this case. We cautioned in *Morse* that our decision in that case was limited to its facts. *Id.* Moreover, given that there is no indication in *Morse* that the claimant went on to work at the second job within the month after she sustained the injury, our concern there was with the speculative nature of earnings the claimant was projected to earn at the second job. By contrast, here we have no need to speculate because the record demonstrates Berryhill's actual earnings from Siteworks following his injury. As noted, Berryhill worked for several weeks at Siteworks after October 16, and the record contains pay stubs and a tax form documenting his earnings at that job. *Cf. Lowry*, 195 Ariz. at 401, ¶ 11, 989 P.2d at 155 (reliance on "actual wages [claimant] has already earned" avoids "speculation about his future earning potential").

¶ 17 Moreover, we acknowledged in *Morse* that "relatively meager compensation" paid to an employee during a training period may not accurately reflect what such an employee "will be expected to earn" after the training is complete. *Id.* at 578, ¶ 12, n. 4, 146 P.3d at 79. Accordingly, when the relevant period includes training, a claimant "may be entitled to have [his] average monthly wage determined based on what [he] would be expected to earn ... at the conclusion of [the] training period." *Id.*, citing *Arizona Workers' Compensation Handbook* § 7.3.4, at 7–15 to –16 (Ray J. Davis et al. eds., 1992 & Supp.2005);

5 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 93.01[2][c], at 93–26 to –27 (Supp.2012). That principle undercuts Wal–Mart's contention that because Siteworks did not pay Berryhill for the training he underwent on October 16, what he earned from Siteworks in the 30 days thereafter is irrelevant.

¶ 18 When a claimant has been hired at a concurrent job and, as here, offers proof sufficient to establish wages he or she earned during and over the month of the injury without relying on speculation, the ALJ should include those earnings in the average monthly wage when they reflect the employee's actual pre-injury earning capacity. The ALJ here therefore erred by concluding she lacked discretion to consider the wages Berryhill earned from Siteworks during the month after the injury in determining his average monthly wage pursuant to A.R.S. § 23–1041(G).

## CONCLUSION

¶ 19 For the foregoing reasons, we set aside the award.

CONCURRING: PETER B. SWANN, Presiding Judge, and RANDALL M. HOWE, Judge.