NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GO DADDY,
*Petitioner Employer*,

BERKLEY NATIONAL INSURANCE CO.,
c/o YORK RISK SERVICES GROUP,
*Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

GREGORY A. SEBION,
*Respondent Employee*.

No. 1 CA-IC 18-0062
FILED 6-4-2019

Special Action - Industrial Commission
ICA No. 20161-200049
INSCA No. 6360255
The Honorable Colleen Marmor, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Jardine, Baker, Hickman & Houston, PLLC, Phoenix
By Charles G. Rehling, Jr.
*Counsel for Petitioner Employer/Carrier*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent ICA*

Matt Fendon Law Group, Phoenix
By Matt C. Fendon
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kent E. Cattani joined.

---

**J O H N S E N**, Judge:

**¶1**        Go Daddy and its insurer, Berkley National Insurance Company (together, "Respondents") petition for review of the Industrial Commission's award establishing Gregory A. Sebion's average monthly wage. For the following reasons, we set aside the award.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        In a prior decision, an Administrative Law Judge ("ALJ") found Sebion suffered a compensable injury on February 12, 2016, while employed by Go Daddy. For purposes of calculating Sebion's temporary disability benefits and potential lost earning capacity, Berkley set his average monthly wage at $2,599.80, based solely on his employment with Go Daddy. Sebion requested a hearing, arguing his average wage needed to take into account that he also worked at Advanced Interior Electronics, Inc. ("AIE").

**¶3**        At the hearing, Respondents did not contest that Sebion was working at both AIE and Go Daddy on the date of his injury. Sebion had been training to be a service technician with AIE, which subcontracts with a telecommunications company to install and repair home cable systems. Having just completed training, Sebion was due to begin working on his own as a technician for AIE when he was injured. Meanwhile, on the date of his injury, Sebion also was three days into a five-week Go Daddy training course preparing him to work at a company call center. The ALJ took into account what Sebion earned from his concurrent employment at both

companies in calculating his average monthly wage to be $3,515.49, including $2,599.80 in wages from Go Daddy and $915.69 from AIE.

**¶4**    After the ALJ affirmed her decision upon review, Respondents timely petitioned for review. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2019), 23-951(A) (2019) and Rule 10 of the Arizona Rules of Procedure for Special Actions.[1]

## DISCUSSION

**¶5**    We defer to an ALJ's factual findings but review questions of law *de novo*. *Gurtler v. Indus. Comm'n*, 237 Ariz. 537, 539, ¶ 7 (App. 2015). We will uphold an ALJ's award unless it is not reasonably supported by the evidence. *Id.*

**¶6**    The determination of a claimant's average monthly wage is governed by A.R.S. § 23-1041 (2019), which provides in pertinent part:

> A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment . . . shall receive the compensation fixed in this chapter on the basis of the employee's average monthly wage at the time of injury.

>      *   *   *

> G. For the purposes of this section, "monthly wage" means the average wage paid during and over the month in which the employee is killed or injured.

**¶7**    When a claimant is working concurrently for two employers at the time of the injury, earnings from both jobs may be aggregated to establish the claimant's average monthly wage. *Wiley v. Indus. Comm'n*, 174 Ariz. 94, 104 (1993). The claimant has the burden of establishing concurrent employment and earnings on the date of the injury. *Berryhill v. Indus. Comm'n*, 232 Ariz. 603, 606, ¶ 9 (App. 2013).

**¶8**    As relevant here, "[t]he primary purpose of the [Arizona Workers' Compensation] Act is to compensate an employee for wages he would have earned without his injury." *Lowry v. Indus. Comm'n*, 195 Ariz.

---

[1]   Absent material revision after the relevant date, we cite the current version of a statute or rule.

398, 401, ¶ 6 (1999). In the usual case, the worker's average monthly wage is presumed to be what the claimant actually earned during the 30 days before the injury. *Id.* at ¶ 10. But that presumption is rebuttable, and a different measure can be used where appropriate to reflect "an accurate measure of [the claimant's] actual pre-injury earning capacity." *Id.* at ¶ 9. In *Lowry*, for example, a worker who had held two jobs was terminated from the higher-paying job a few days before he suffered a compensable injury. *Id.* The supreme court set aside the ALJ's determination of the worker's average monthly wage because it was based only on what the worker earned at his lone remaining job. *Id.* at ¶ 12. Under those circumstances, wages from both jobs needed to be taken into account "to determine a realistic pre-injury wage base." *Id.* at 400, ¶ 6 (quoting *Wiley*, 174 Ariz. at 99).

¶9 According to the evidence at the hearing, as a full-time service technician at AIE, Sebion would work Sunday through Thursday and would be assigned service calls throughout the West Valley. His first service call would begin at 8:00 a.m., and he would finish work between 5:00 and 7:00 p.m. each day. Meanwhile, if Sebion had completed his Go Daddy training program, he would have been assigned to work at a call center in Scottsdale or Gilbert eight hours a day, five days a week, beginning at either 2:30 or 3:30 p.m. His work week at Go Daddy would be either Tuesday through Saturday or Sunday through Thursday. Accordingly, including a modest allowance for travel time, on three or four days a week, Sebion would have had to leave his AIE job two to five hours early to make it to Go Daddy on time.

¶10 Asked how he would make that schedule work, Sebion testified that other service technicians on his team at AIE would not mind taking the service calls he would have to miss because it would mean more money for them. In support of that proposition, he testified his "team lead" had told him other technicians could take service calls for Sebion when he left work early. But even accepting as true Sebion's account of his conversation with his "team lead," he misunderstood the situation. Alyssa Kechely is the operations manager at AIE and is in charge of hiring, firing and schedule-making. She testified she was the only person at AIE with authority to approve an altered work schedule for Sebion. Kechely further testified that service technicians work full time, she would not permit any service technician to work less than full time, and, because service calls are assigned from the telecommunications company, the work-around Sebion proposed would not be allowed because it would impose a heavier load on the other technicians. Kechely testified she would have required Sebion to

4

choose between working at AIE and working at Go Daddy because she does not allow employees to have simultaneous "other full-time employment."

**¶11** On this record, Sebion's contention that he could have continued working full time for both AIE and Go Daddy is sheer speculation, not reasonably supported by the evidence. *See Morse v. Indus. Comm'n*, 213 Ariz. 575, 579, ¶¶ 15-16 (App. 2006) ("projected earnings from a job Claimant has not yet performed are too speculative a basis on which to set the average monthly wage").

**¶12** Sebion cites *Lowry* and *Berryhill* to support the ALJ's award. But neither of those concurrent-employment cases is relevant; the claimants in those cases both had successfully held down two simultaneous jobs for extended periods of time. *See Lowry*, 195 Ariz. at 399-401, ¶¶ 2, 9, 11 (applicant held concurrent employment "for at least five months"); *Berryhill*, 232 Ariz. at 604-05, 607, ¶¶ 2-4, 16 (applicant worked both jobs "for several weeks" after his compensable injury). Here, by contrast, any presumption that Sebion would be able to continue working concurrently at AIE and Go Daddy is not supported by any reasonable evidence. *See Gurtler*, 237 Ariz. at 539, ¶ 7.

**¶13** Nor do we accept Sebion's contention that we should affirm the ALJ's award because it was based simply on what he actually earned during the 30 days before the injury. It appears the ALJ calculated Sebion's average monthly wage by adding what he earned from AIE during the 30 days before the injury to an extrapolated amount based on three days of work at Go Daddy. Although that approach may be appropriate under some circumstances, in this case, such an approach disregarded the purpose of the inquiry, which is to ascertain the claimant's "actual pre-injury earning capacity." *Lowry*, 195 Ariz. at 401, ¶ 9. As stated, Sebion worked only three days for Go Daddy during the month before his injury. Because he was still in training at AIE, he had to leave his work at AIE at least seven hours early on each of those days to be on time for his training shifts at Go Daddy. The record makes clear that he obtained permission to leave early on those days only by misrepresenting why he needed to cut short his day: Kechely testified she approved Sebion's altered schedule the week of his injury only because Sebion had said he needed to leave to care for his mother and did not say he was leaving to go train at another job. Kechely testified that, had Sebion been truthful with her as to why he wanted to alter his schedule, she would not have approved such request, let alone authorized such a schedule on a continuing basis.

¶14 In short, the problem with Sebion's argument is not that he managed both jobs only for three days. It is that he managed both jobs only by misrepresenting why he needed to leave work at AIE early. Sebion had the burden to prove his concurrent employment accurately reflected his realistic earning capacity and, other than his own self-serving testimony, he presented no evidence to support that proposition. Although we generally defer to the ALJ's credibility determinations, this is not a matter of credibility. Kechely, who oversaw hiring and scheduling at AIE, testified she would not have allowed Sebion to leave work early to go to training at Go Daddy and would not have allowed him to leave work early to go to another full-time job at Go Daddy. Thus, the evidence before the ALJ offered no support for a finding that Sebion's actual wages during the 30 days before his injury represented his realistic earning capacity with both employers.

## CONCLUSION

¶15 For the reasons stated above, we set aside the ALJ's award.



AMY M. WOOD • Clerk of the Court
FILED: AA