IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

———————————————

JULIE A. MUNOZ,
*Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA
*Respondent*,

SONIC RESTAURANTS #10,
*Respondent Employer*,

HARTFORD ACCIDENT & INDEMNITY/GALLAGHER BASSETT,
*Respondent Insurer*.

No. 2 CA-IC 2013-0001
Filed February 10, 2014

———————————————

Special Action – Industrial Commission
ICA Claim No. 20112340156
Insurer No. 001461041756WC01
Jacqueline Wohl, Administrative Law Judge

**AWARD AFFIRMED**

———————————————

COUNSEL

The Hansen Firm, PLLC, Tucson
By Deborah P. Hansen
*Counsel for Petitioner Employee*

The Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Gregory L. Folger, Lori L. Voepel, and Jennifer B. Anderson
*Counsel for Respondents Employer and Insurer*

———————————————

**OPINION**

———————————————

Presiding Judge Kelly authored the opinion of the Court, in which
Judge Espinosa and Judge Eckerstrom concurred.

———————————————

K E L L Y, Presiding Judge:

**¶1**    In this statutory special action, petitioner Julie Munoz
challenges the Industrial Commission's workers' compensation
award, claiming the administrative law judge ("ALJ") improperly
excluded from her average monthly wage the income she had
contracted to receive from her horse training and rehabilitation
business.  For the following reasons, we affirm the ALJ's award.

## Factual and Procedural Background

**¶2**    We view the evidence in the light most favorable to
upholding the ALJ's award.  *Sw. Gas Corp. v. Indus. Comm'n*, 200
Ariz. 292, ¶ 2, 25 P.3d 1164, 1166 (App. 2001).  In 2011, Munoz
injured her shoulder while working for respondent Sonic
Restaurants.  She filed a claim for workers' compensation benefits
for the industrial injury.  Hartford, the respondent insurer, accepted
her claim and based her compensation of $524.98 on her average
monthly wage ("AMW") from Sonic.  The Industrial Commission of
Arizona approved that amount.  At a hearing, the parties stipulated
that this amount should be increased to $1,570.68 to include wages
from Munoz's concurrent job at a home improvement store.

**¶3**    Munoz, however, claimed that her AMW calculation
also should include earnings from the horse training and
rehabilitation business she had established just before her injury.
She alleged at the hearing and in a post-hearing memorandum that
she already had received five contracts to train and rehabilitate
horses, which she claimed were "uncontradicted evidence of earning

capacity as of the date of injury."[1]  She testified at the hearing that she had not yet moved onto the property where she planned to board the horses, had not taken possession of any of the horses, and had not received payment on any of the contracts other than a $100 deposit from one horse owner.[2]

¶4          Following the hearing, the ALJ adopted the parties' stipulated amount of Munoz's monthly wages from Sonic and the home improvement store.  After noting that AMW should be determined by examining what a claimant actually earns during the thirty days prior to the industrial industry, the ALJ concluded the horse contracts represented prospective income that could not properly be calculated as AMW.  The ALJ further found that the "Contracting Agreements" for the prospective earnings described an independent contractor relationship between Munoz and the horse owners and, as such, were not subject to the Workers' Compensation Act ("the Act") nor properly calculable as AMW.  The ALJ thus excluded the prospective horse business earnings from Munoz's AMW calculation.

¶5          Munoz requested administrative review, and the ALJ affirmed the award.  She then petitioned this court for review.  We have jurisdiction of this statutory special action pursuant to A.R.S. §§ 12–120.21(A)(2) and 23–951(A), and Rule 10, Ariz. R. P. Spec. Actions.

**Discussion**

¶6          We first determine whether Munoz was an independent contractor in her horse business, and whether any earnings from

---

[1]The record shows Munoz contracted with five different horse owners to board, train, and rehabilitate the owners' horses.  The contract agreements were dated May 24, May 31, June 3, June 15, and June 24 of 2011.  Munoz testified she was to receive a deposit from each owner when the horse was collected, and the balance when she had finished training and/or rehabilitating the horse.

[2]Munoz refunded this deposit when her injury prevented her from executing the contracts.

that business therefore were outside the scope of the Act and properly excluded from the AMW calculation. Munoz argues the ALJ erred by so concluding.

¶7        In the "Decision Upon Hearing and Findings and Award Establishing Average Monthly Wage," the ALJ concluded

> there was no evidence that [prospective income from the horse contracts] was subject to the Worker[s'] Compensation Act. The "Contracting Agreements" on their face describe an independent contractor relationship between the applicant and the horse owners. Because the applicant did not show that these earnings were subject to the Workers' Compensation Act, they cannot be considered in computing her average monthly wage.

¶8        The ALJ relied on A.R.S. § 23-902 and our supreme court's holding in *Faulkner v. Industrial Commission*, 71 Ariz. 76, 223 P.2d 905 (1950), in determining that income earned by a claimant who is not subject to the Act—such as an independent contractor—cannot be considered in an AMW calculation. Munoz claims, however, that the ALJ erred by conflating who properly may be covered under the Act with what wages may form the basis for the AMW calculation. She argues that the issue is "not whether [Munoz] is an employee of the horse-owners that she has contracted with" but whether the ALJ's calculation of AMW improperly excluded wages from the horse training business that constituted real economic gain to Munoz.

¶9        We will uphold an ALJ's factual findings if they are reasonably supported by the evidence. *Micucci v. Indus. Comm'n*, 108 Ariz. 194, 195, 494 P.2d 1324, 1325 (1972). And "[i]n any given case, the ALJ has discretion to choose the appropriate formula for calculating the average monthly wage" within the provided framework. *Morse v. Indus. Comm'n*, 213 Ariz. 575, ¶ 9, 146 P.3d 76, 78 (App. 2006). The determination that a claimant is an independent

4

contractor, however, is a conclusion of law. *Anton v. Indus. Comm'n*, 141 Ariz. 566, 569, 688 P.2d 192, 195 (App. 1984). Although we defer to the ALJ's factual findings, we review questions of law de novo. *Hahn v. Indus. Comm'n*, 227 Ariz. 72, ¶ 5, 252 P.3d 1036, 1038 (App. 2011). In doing so, we liberally construe the Workers' Compensation Act in order to effectuate its remedial purpose. *Schuck & Sons Constr. v. Indus. Comm'n*, 213 Ariz. 74, ¶ 13, 138 P.3d 1201, 1204 (App. 2006). This includes a liberal construction of who may be considered an "employee" under the Act. *See Hughes v. Indus. Comm'n*, 113 Ariz. 517, 519, 558 P.2d 11, 13 (1976).

¶10 The determination of a claimant's average monthly wage is governed by A.R.S. § 23-1041, which provides in pertinent part:

> A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment . . . shall receive the compensation fixed in this chapter on the basis of the employee's average monthly wage at the time of injury.
>
> . . . .
>
> G. For the purposes of this section, "monthly wage" means the average wage paid during and over the month in which the employee is killed or injured.

Arizona courts have created the presumption that a claimant's average monthly wage under subpart (G) is the income actually earned during the thirty days prior to injury. *See Lowry v. Indus. Comm'n*, 195 Ariz. 398, ¶¶ 6, 10, 989 P.2d 152, 154-55 (1999); *Swift Transp. v. Indus. Comm'n*, 189 Ariz. 10, 11, 938 P.2d 59, 60 (App. 1996). However, when "'the thirty-day period does not represent the earning capacity of a claimant, the ALJ may in its discretion look at a reasonable period beyond the given month to allow consideration of pertinent factors.'" *Berryhill v. Indus. Comm'n*, 232

Ariz. 603, ¶ 7, 307 P.3d 1030, 1032 (App. 2013), *quoting Swift*, 189 Ariz. at 11, 938 P.2d at 60.

¶11        When a claimant is concurrently employed at the time of injury, earnings from both positions may be aggregated to establish the claimant's AMW. *Wiley v. Indus. Comm'n,* 174 Ariz. 94, 104, 847 P.2d 595, 605 (1993) (addressing "wages from concurrent dissimilar employment"). The claimant has the burden of establishing concurrent employment and earnings on the date of injury. *See Zapien v. Indus. Comm'n,* 12 Ariz. App. 334, 336, 470 P.2d 482, 484 (1970).

¶12        If a claimant's concurrent employment is not subject to the Workers' Compensation Act, then the employee's earnings from such employment cannot be considered for purposes of calculating AMW. *See Faulkner*, 71 Ariz. at 78, 223 P.2d at 906; *Wheeler v. Indus. Comm'n*, 22 Ariz. App. 488, 490, 528 P.2d 874, 876 (1974); *see also Arizona Workers' Compensation Handbook* § 7.3.3.2, at 7-15 (Ray Jay Davis et al. eds., 1992) (hereinafter "Handbook"). Independent contractors generally are excluded from coverage under the Act. *See* § 23-902(C), (D); *Handbook* § 2.2.2.3, at 2-9.

¶13        In *Faulkner v. Industrial Commission*, our supreme court concluded that in determining a claimant's average monthly wage, the Industrial Commission did not err by failing to consider concurrent wages received from the claimant's full-time, uninsured employment with the Veteran's Administration. 71 Ariz. at 77-78, 223 P.2d at 905-06. The court reasoned that the Act[3] is based upon the principle of insurance and the Industrial Commission would be "derelict in its duty" if it included in the AMW calculation wages from an employer who "was neither covered nor could be covered by a policy with the commission." *Id.*

---

[3] Although *Faulkner* and other older cases refer to the "Workmen's Compensation Act," rather than the current "Workers' Compensation Act," both terms refer to the workmen's compensation act mandated by article XVIII, § 8, Ariz. Const. *See* A.R.S. § 23-901(19).

**¶14** In *Wheeler v. Industrial Commission*, the court considered whether a claimant's independent self-employment wages should be included in computing his average monthly wage. 22 Ariz. App. at 489, 528 P.2d at 875. In doing so, it noted that while § 23-1041 intends that workers receive compensation reasonably representing their earning capacity at the time of the industrial accident, *Faulkner* nonetheless controlled the issue. *Id.* at 490, 528 P.2d at 876. The *Wheeler* court found that it would be "improper and unjust to shift the cost from the self-employed businessman to the employer purchasing workmen's compensation insurance" and noted that self-employed workers had "alternatives available . . . to protect [themselves] against injury and loss of income which is uninsurable under the Arizona Workmen's Compensation Act." *Id.* at 489-90, 528 P.2d at 875-76. The court concluded that, under *Faulkner*, it would be improper to include earnings from concurrent self-employment in the AMW calculation. *Id.* at 490, 528 P.2d at 876.[4] The same reasoning applies here.

**¶15** We next consider whether income from Munoz's horse-care business arose from an independent contractor relationship with the horse owners, precluding its inclusion in the AMW calculation. *See Faulkner*, 71 Ariz. at 78, 223 P.2d at 906; *Wheeler*, 22 Ariz. App. at 490, 528 P.2d at 876; *see also Handbook* § 7.3.3.2, at 7-15. Neither the presence nor the absence of a written contract controls whether a claimant is an independent contractor. *Anton*, 141 Ariz. at 568, 688 P.2d at 194. Rather, "[t]he distinction between an employee and an independent contractor usually rests on the extent of control the employer may exercise over the details of the work." *Cent.*

---

[4] Our supreme court has acknowledged that the *Faulkner* rationale has been subjected to broad criticism, *e.g. Floyd Hartshorn Plastering Co. v. Indus. Comm'n*, 16 Ariz. App. 498, 507, 494 P.2d 398, 407 (1972), but has chosen not to overrule its holding. *Wiley v. Indus. Comm'n*, 174 Ariz. 94, 102, 847 P.2d 595, 603 (1993). We thus agree with the *Wheeler* court that the *Faulkner* decision "still has legal and practical viability" and controls the issue. 22 Ariz. App. at 489-90, 528 P.2d at 875-76.

*Mgmt. Co. v. Indus. Comm'n*, 162 Ariz. 187, 189, 781 P.2d 1374, 1376 (App. 1989).

**¶16**     To determine who has the right to control, courts consider "various indicia of control" to resolve whether a claimant is an independent contractor or employee. *Home Ins. Co. v. Indus. Comm'n*, 123 Ariz. 348, 350, 599 P.2d 801, 803 (1979). Such indicia include, inter alia, the duration of employment, the method of remuneration, who furnishes equipment, who has the right to hire and fire, who bears responsibility for workmen's compensation insurance, and the extent of the employer's control over the details of the work. *Id.* No one factor is determinative, as courts must look to the totality of the facts and circumstances. *El Dorado Ins. Co. v. Indus. Comm'n*, 25 Ariz. App. 617, 619, 545 P.2d 465, 467 (1976).

**¶17**     The evidence presented at the hearing established that Munoz was acting as an independent contractor while operating her horse business. The contracts, which were drafted by Munoz, refer to Munoz as "Contractor," and the horse owners, respectively, as "Owner." They obligate Munoz to "Train and Rehabilitate Horse(s) on the following estimated schedule": 60 to 120 days for $500 per month for a minimum of 60 days; after that, the price will be reduced by $50 for each month the contract is extended.

**¶18**     Nothing in these contracts, which state they are the "entire agreement between the parties," indicates that the horse owners had any right to control the manner in which Munoz trained or cared for the horses. Munoz presented no evidence that the horse owners had any control over Munoz's schedule or that they furnished any equipment for her use. *See Zapien*, 12 Ariz. App. at 336, 470 P.2d at 484 (claimant has burden of establishing average monthly wage). Munoz explained that the horse owners would pay her a deposit when she took possession of their horses and that the balance was to be paid when she was finished. Further, she expressly disclaimed responsibility and liability arising from "Feeding, shoeing, shots, and/or any Veterinarian expenses," indicating that Munoz—and not the horse owners—determined the scope of her horse care and training duties. This evidence does not establish that Munoz was an employee of the horse owners and thus subject to the Workers' Compensation Act. *See Zapien*, 12 Ariz. App.

at 336, 470 P.2d at 484. We therefore conclude she was an independent contractor, and any income from the horse contracts properly was excluded from her AMW calculation.

¶19 At oral argument, Munoz urged us to disregard or overturn *Faulkner* and its progeny.[5] But, as the court in *Wheeler* correctly noted, it would be improper for this court to disregard our supreme court's decision in *Faulkner* to conclude the Commission should have included wages from independent self-employment in Munoz's AMW calculation. 22 Ariz. App. at 490, 528 P.2d at 876. "Whether prior decisions of the highest court in a state are to be disaffirmed is a question for the court which makes the decisions." *McKay v. Indus. Comm'n*, 103 Ariz. 191, 193, 438 P.2d 757, 759 (1968). Further, in general, it is the sole prerogative of the Legislature to specify any additional persons or classes of persons who are to be considered employees within the meaning of the Workers' Compensation Act. *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 19, 86 P.3d 944, 950 (App. 2004).

¶20 Munoz also argues for the first time in her reply brief that she is a sole proprietor, rather than an independent contractor.[6] She claims that because sole proprietors are contemplated under the Act, her anticipated horse business income should be calculable as AMW. She relies on § 23-901(6)(i) to argue that sole proprietors

_____

[5]Munoz claimed, in part, that recent statutory changes should affect our analysis. But she did not develop this contention or support her claim with relevant legal authority, *see* Ariz. R. Civ. App. P. 13(a)(6), and did not raise this issue prior to oral argument, *see Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004) ("Generally, issues and arguments raised for the first time at oral argument on appeal are untimely and deemed waived.").

[6]Generally, an issue raised for the first time in a reply brief is waived, although we may review it at our discretion. *State v. Aleman*, 210 Ariz. 232, ¶¶ 9-10, 109 P.3d 571, 575 (App. 2005); Ariz. R. Civ. App. P. 13(c) (reply brief "shall be confined strictly to rebuttal of points urged in the appellee's brief"). In the exercise of that discretion, we briefly address the issue.

potentially are eligible for coverage under the Act. That provision states in relevant part that

> [t]he sole proprietor of a business subject to this chapter may be deemed to be an employee entitled to benefits provided by this chapter on written acceptance, by endorsement, at the discretion of the insurance carrier of an application for coverage by the sole proprietor. The basis for computing premium payments and compensation benefits for the sole proprietor . . . is subject to the discretionary approval of the insurance carrier.

**¶21** Under the Act, a sole proprietor *may* be entitled to benefits, but such a determination is at the discretion of the insurance carrier with whom the sole proprietor applies for workers' compensation coverage. § 23-901(6)(i). Munoz does not allege or demonstrate that she had applied for or obtained workers' compensation coverage for her horse business, or that she would have received benefits as a sole proprietor had she been injured while working in her horse business. *See Zapien*, 12 Ariz. App. at 336, 470 P.2d at 484 (claimant has burden of establishing average monthly wage).[7]

**¶22** Because we conclude that Munoz's horse business income would arise from an independent contractor relationship with the horse owners, placing it outside the scope of the Act and thus not includable in her AMW, we do not address her separate

---

[7]And, as noted by the court in *Wheeler*, self-employed business persons have alternatives to the workers' compensation scheme for protection against injury and loss of income. 22 Ariz. App. 488, 489-90, 528 P.2d 874, 875-76.

argument regarding whether prospective income may be included in the AMW calculation.[8]

## Disposition

¶23        For the foregoing reasons, the ALJ's award is affirmed.

---

[8]In her opening brief, Munoz also claims that "[i]n addition to the legal errors, what [the ALJ's] Decision does is impermissibly shift the burden of the loss of wage earning and wage earning capacity to the Applicant." She does not provide any case law or reasoning to support her burden-shifting argument. We thus do not consider it further. *See* Ariz. R. Civ. App. P. 13(a)(6) (appellate brief "shall contain . . . the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on").