WEINZWEIG, Judge:
*593 ¶1 This case involves an airport taxicab driver who sought workers' compensation benefits for injuries he sustained while driving a taxi he leased from a cab company. The Industrial Commission of Arizona ("ICA") found the injury was non-compensable because the driver was an independent contractor of the cab company rather than an employee for workers' compensation purposes. We affirm.
FACTS AND PROCEDURAL BACKGROUND
¶2 AAA Cab Services ("AAA") is a transportation business and one of three taxicab companies licensed to operate at Sky Harbor International Airport (the "Airport") by the City of Phoenix. AAA leases taxicabs to its airport drivers under a standard one-year lease agreement that automatically renews unless terminated.
¶3 Before leasing a taxicab, AAA requires all drivers to complete a written application, provide their driver's license, undergo a background check and attend an eight-hour defensive driving course. The lease agreement permits AAA drivers to work for other taxicab companies; designates them as independent contractors who are responsible for paying their own taxes; cautions that AAA provides no workers' compensation insurance to drivers; and authorizes drivers to terminate the relationship without cause upon 45 days of notice. AAA can terminate the agreement only for cause.
¶4 AAA imposes no minimum hour requirement on airport drivers and conducts no performance reviews of them. Airport drivers set their own work schedule, arrange for replacement drivers when unavailable and purchase their own gasoline. Airport drivers receive no salary or wages from AAA. The drivers instead retain all passenger fares as compensation, while AAA receives fixed, regular lease payments from the drivers for their taxis. Cash transactions are not reported to AAA, but AAA processes all vouchers and credit card payments to airport drivers and deducts a bank service charge. AAA annually issues IRS 1099 forms to airport drivers to report their income. AAA registers, licenses, insures and performs all necessary maintenance and upkeep on the leased taxicabs. AAA maintains its own company rules to ensure safety and facilitate a positive customer experience; for instance, AAA requires drivers to wear seatbelts, observe all traffic laws and clean the vehicles.
¶5 Most significant here, the Airport wields extensive control and oversight over the general and minute-to-minute operations of all airport taxicab drivers. The Airport requires a separate application, an independent test, a Department of Transportation physical and a federal background check.
¶6 The Airport sets passenger fares. It also imposes and enforces its own detailed set of rules for drivers. For instance, it requires the drivers to use E85 fuel, dress professionally, clean their cabs, be courteous to passengers and refrain from eating, drinking, or smoking in the vehicle. The Airport also leads when disciplinary action is required, not the cab companies. The Airport imposes 95 percent of all disciplinary actions against airport drivers.
¶7 The Airport restricts the movement and customers of airport drivers. Airport drivers wait in a designated airport parking lot until an airport dispatcher instructs them to retrieve passengers at a particular terminal. The drivers then retrieve the passengers and transport them to their destination before returning to the designated airport lot and waiting for the airport dispatcher's next call. The Airport provides a breakroom for drivers.
¶8 Kardakh Danial drives a AAA taxicab and operates exclusively from the Airport. He signed AAA's standard lease agreement in 2002, which has since been annually renewed. He was injured in May 2016 while driving airport passengers in a AAA leased taxicab and requested workers' compensation *594 benefits from AAA's insurer, which were denied. He filed a timely protest with the ICA.
¶9 An administrative law judge ("ALJ") conducted a two-day hearing. She heard testimony from Danial and his brother, who also leases a AAA cab, along with AAA's present and former fleet managers. The ALJ entered an award for a non-compensable claim. Though characterizing it as a "close call," the ALJ found that Danial was an independent contractor because the AAA "exercised very little direction or control over the details of [Danial's] work." Danial requested administrative review, but the ALJ summarily affirmed the award.
¶10 Danial timely challenged the ruling. This court has jurisdiction pursuant to A.R.S. § 12-120.21(A)(2) and § 23-951(A), as well as Arizona Rule of Procedure for Special Actions 10.
DISCUSSION
¶11 The sole issue is whether Danial is an independent contractor or AAA employee under A.R.S. § 23-902. Danial maintains he is an employee. The ALJ found he was an independent contractor. Whether Danial is an independent contractor or employee is a question of law that we review de novo . Vance Int'l v. Indus. Comm'n, 191 Ariz. 98, 100, ¶ 6, 952 P.2d 336 (App. 1998). We defer to the ALJ's factual findings unless no reasonable evidence supports them and view the evidence in the light most favorable to upholding the award. Micucci v. Indus. Comm'n , 108 Ariz. 194, 195, 494 P.2d 1324 (1972).
¶12 An employee who is injured in the course of employment is generally entitled to compensation for loss sustained on account of the injury. A.R.S. § 23-1021. A factual predicate for recovery, however, is the existence of an employer-employee relationship. An independent contractor is not an employee for purposes of workers' compensation law. See Munoz v. Indus. Comm'n , 234 Ariz. 145, 149, ¶ 12, 318 P.3d 439 (App. 2014). The legislature has drawn the line between employees and independent contractors in this context as follows:
When an employer procures work to be done for the employer by a contractor over whose work the employer retains supervision or control, and the work is a part or process in the trade or business of the employer, then the contractors and the contractor's employees, and any subcontractor and the subcontractor's employees, are, within the meaning of this section, employees of the original employer. For the purposes of this subsection, "part or process in the trade or business of the employer" means a particular work activity that in the context of an ongoing and integral business process is regular, ordinary or routine in the operation of the business or is routinely done through the business' own employees.
A person engaged in work for a business, and who while so engaged is independent of that business in the execution of the work and not subject to the rule or control of the business for which the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to that business only in effecting a result in accordance with that business design, is an independent contractor .
A.R.S. § 23-902(B)-(C) (emphases added).
¶13 Arizona courts have adopted the control test to distinguish between employees and independent contractors in workers' compensation cases. The distinction turns on a prospective employer's right "to control the details of the work." Cent. Mgmt. Co. v. Indus. Comm'n , 162 Ariz. 187, 189, 781 P.2d 1374 (App. 1989) (quoting 1C A. Larson, Workmen's Compensation Law § 44.10 (1986) ); see also Home Ins. Co. v. Indus. Comm'n , 123 Ariz. 348, 350, 599 P.2d 801 (1979) ("The right to control or supervise the method of reaching a specific result determines whether an individual is an employee or an independent contractor."). The court examines the "objective nature of the relationship" when determining the character of an employment arrangement based upon "the totality of the facts and circumstances of each case." Anton v. Indus. Comm'n , 141 Ariz. 566, 568-69, 688 P.2d 192 (1984).
¶14 Arizona courts have recognized several nonexclusive indicia of control, including "the *595 duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business." Home Ins. Co. , 123 Ariz. at 350, 599 P.2d 801.[1]
¶15 The record supports the ALJ's finding that Danial was an independent contractor, not AAA's employee. AAA does not possess or exercise the degree or quality of control over its airport drivers to recognize an employee-employer relationship for workers' compensation purposes. Danial receives his general and minute-to-minute direction from the Airport and its dispatchers, not AAA. The Airport fixes his compensation in the form of passenger rates and fares. AAA earns no income from his passenger fares, only from his lease payments. The Airport also imposes fuel and additional hiring requirements on drivers. And while AAA has company rules, the Airport imposes almost all disciplinary action against AAA's airport drivers.[2]
¶16 Second, Danial retains significant flexibility under the AAA lease agreement. He can simultaneously work for AAA and its competitors and terminate the lease without cause upon 45 days' notice, while AAA needs cause to terminate. He controls his own hours and driving schedule, keeps his fares and tips, and pays his own taxes. He is not subjected to regular AAA performance reviews and does not have personalized AAA business cards. If unable or unwilling to work, he can secure a AAA-approved relief driver to operate his cab.
¶17 We note the stark contrast in this regard with AAA's medical transport drivers, who drive patients to medical providers in non-emergency settings. AAA hires the medical drivers as AAA employees. The medical drivers receive biweekly AAA payroll checks with tax withholding. AAA fixes their work hours and pays for their gasoline.
¶18 Third, Danial's lease agreement expressly identifies him as an independent contractor and specifies that AAA will not procure workers' compensation insurance. It further directs that Danial is responsible for his federal and state income taxes. Danial also "agree[d] to accept full responsibility for any and all injuries" and "to make no claim for workmen's compensation or unemployment." Though not controlling, the terms of Danial's signed lease agreement only reinforce the ALJ's finding. Anton , 141 Ariz. at 568, 688 P.2d 192 ("We agree that neither the absence nor the presence of a written contract controls the resolution of the question of whether petitioner was an employee or an independent contractor.").[3]
¶19 Danial argues that Central Management Company v. Industrial Commission , 162 Ariz. 187, 781 P.2d 1374 (App. 1989), controls and compels a different result. Central Management raised the same issue here. An ALJ found the claimant taxicab driver *596 was an employee of the cab company under A.R.S. § 23-902, not an independent contractor, and this court affirmed. Id . But the facts and circumstances here and there are meaningfully different on the dispositive issue of control. The cab company in Central Management withheld and exerted far greater control over its drivers than does AAA over its airport drivers. State Comp. Fund v. Yellow Cab Co. of Phoenix , 197 Ariz. 120, 123, ¶¶ 9-10, 3 P.3d 1040 (App. 1999) (distinguishing Central Management where cab company exercised less control). The drivers here (unlike in Central Management ) receive their orders and service routes from the Airport and its dispatcher, not the cab company's dispatcher; the drivers here (unlike there) are disciplined almost exclusively by Airport authorities, not the cab company; the passenger fares here (unlike there) are set by the Airport, not the cab company; the drivers here (unlike there) can simultaneously work for any other cab company; the lease agreement here (unlike there) expressly specifies that drivers are independent contractors and disclaims workers' compensation insurance; the drivers here (unlike there) are not subject to continuous performance reviews; and the drivers here (unlike there) control their own work hours. Central Management , 162 Ariz. at 191, 781 P.2d 1374.
¶20 In sum, the record includes ample evidence to support the ALJ's finding that Danial was an independent contractor rather than AAA's employee.
CONCLUSION
¶21 We affirm.

Danial insists that Santiago v. Phoenix Newspapers adopted several more factors from the Restatement (Second) of Agency and IRS guidelines "to determine a worker's employment status." 164 Ariz. 505, 794 P.2d 138 (1990). But Santiago considered the distinction between employees and independent contractors in the context of vicarious liability, not workers' compensation benefits. Id . at 512 n.6, 794 P.2d 138 ("We recognize that the law of workers' compensation carries with it unique historical and statutory provisions which may not be completely applicable to the theory of vicarious liability.").

We note that state and local laws require AAA to exercise various indicia of control over its drivers, but government-required control is not normally ascribed to an employer under the control test in workers' compensation cases. See, e.g. , La Grande v. B & L Servs., Inc. , 432 So.2d 1364, 1367 (Fla. App. 1983) ("[I]t became evident that what little dress code there was (shoes, long pants and collared shirt) was required by local ordinance. Here again, we would note that governmental regulation of workers should not be visited upon the putative employer in determining whether the latter has such control over the worker as would establish an employment relationship.").

While Danial testified he could not read English and did not understand the lease when he signed it, the record indicates that AAA reviews the lease agreement with new drivers "paragraph by paragraph" to ensure their understanding and orally explains to them that drivers are independent contractors, must provide their own insurance, and pay their own taxes.