NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JANI KING OF PHOENIX, *Petitioner Employer*,

LIBERTY MUTUAL INSURANCE COMPANY, *Petitioner Carrier,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

GILDARDO RIOS, *Respondent Employee.*

No. 1 CA-IC 18-0074
FILED 11-7-2019

---

Special Action – Industrial Commission

ICA Claim No. 20131-830010
Carrier Claim No. WC608-A34965
Layna Taylor, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Lundmark Barberich La Mont & Slavin PC, Phoenix
By Lisa M La Mont, Danielle S Vukonich
*Counsel for Petitioners Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Gaetano J Testini
*Counsel for Respondent*

Law Offices of Robert E Wisniewski, Phoenix
By Robert E Wisniewski
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

**¶1** This is a special action review of an Industrial Commission of Arizona (ICA) Award providing claimant Gildardo Rios a monthly benefit of $663.29 for a psychiatric impairment attributable to an industrial injury. Employer Jani King of Phoenix and insurance carrier Liberty Mutual Insurance Company argue the Award should be set aside because it is based on "a theory of the evidence that is unsupported by any rational interpretation of the facts." Applying a stipulation by the parties, however, the Award is supported by sufficient evidence and is affirmed.

**FACTS AND PROCEDURAL HISTORY**

**¶2** Rios is a franchise holder of Jani-King International, Inc., operating as Jani King of Phoenix, an office-cleaning business. In 2012, he was injured when his car was hit from behind while he was driving between cleaning jobs. Having had a prior worker's compensation claim, he petitioned the ICA, and his claim was reopened. The 2012 industrial injury was Rios' third accident since 1998. The second accident, which occurred in 2007, was also a work-related car accident that resulted in a back injury. He had back surgery for that injury and was rated with a 15 percent permanent impairment. In the 2012 incident, Rios suffered a further back injury. As a result of that injury, his physicians diagnosed him with a depressive disorder, and he received treatment for depression. In 2015, the 2012 claim was closed with a five percent whole person permanent psychiatric impairment and no loss of earning capacity.

2

¶3        This special action concerns Rios' claim for benefits stemming from lost earning capacity as a result of the 2012 injury. The administrative law judge (ALJ) heard testimony from Rios and two psychiatric experts regarding how Rios' mental impairment affects his employment.

¶4        Rios testified about his condition at work after the accident. He generally testified he experiences a great deal of psychological pressure from the running of the business, has recruited his wife and daughter to help him with the physical part of the work and is not very motivated concerning the company. He continues to have back pain that limits his ability to do the physical aspects of the work. He also testified that he feels "like I'm not the same person who can develop the jobs in the same manner as before."

¶5        Psychiatrist Gary Prince, M.D., has been treating Rios for his mental health condition ("major depression, recurrent, with psychotic features") since 2012. He testified he has never been asked to recommend work restrictions for Rios, instead deferring to the physicians who were treating Rios' back condition. He was not asked by either party during the hearing whether he would recommend work restrictions for Rios and, if so, what they would be.

¶6        Dr. Prince testified Rios had restrictions in what he was able to do at work as a result of the psychiatric condition causally related to the 2012 injury:

> Q.    Let me then ask you something, perhaps in a hypothetical sense. Mr. Rios tells us, testified here that he has some diminished functionality, that he has problems in concentration, he has problems in staying on top of things with the stress.
>
> Are those components of his major depressive recurrent condition with the psychotic features?
>
> A.    Yes. Yes. I think they are part and parcel of the ongoing depressive experience, and would impair his functioning at work to a certain extent.

Q.    We all recognize he had a prior psychiatric problem that was at least somewhat dormant, correct?

A.    Yes.

Q.    If he tells us that he can't stay on task, he is distracted at times, he has difficulties concentrating and going out seeing clients, and things of that nature, and building up the janitor work that he told us he does, do you feel that those are limitations that you would attribute to that major depression recurrent psychotic features?

A.    Yes. I think it all fits in under that label of major depressive disorder that he suffers from.

Q.    And you attribute, at least the recurrence of that, to the industrial episode of 8/24/12 and the sequela of that?

A.    Yes. I believe so.

Dr. Prince confirmed his opinions were to a reasonable degree of medical probability.

¶7    Psychiatrist Dr. Joel Parker, M.D., who conducted an independent medical examination of Rios in 2015 and who reviewed records in 2018, testified that Rios does not have any work restrictions related to his psychiatric condition.

¶8    At the end of the hearing, the parties entered into (and the ALJ accepted) the following stipulation:

> [I]f [the ALJ] determine[s] there aren't any work restrictions attributable from a psychiatric standpoint as a result of the industrial injury, [then there would be] no loss [of earning capacity].
>
> If, however, [the ALJ] find[s] that he does have work restrictions attributable to the injury, [Rios

4

would be entitled to a monthly benefit of $663.29].

In the Award, after summarizing the evidence received, the ALJ made the following statements (with legal citations omitted):

> 8.      The parties stipulated, and it is found, that if the applicant is found to have no work restrictions related to the industrial injury based on the medical evidence, then he has no loss of earning capacity; but if he does have such restrictions, the applicant has a loss of earning capacity . . . .
>
> 9.      Any conflict in the medical evidence and questions of witness credibility must be resolved by the administrative law judge.
>
> 10.     Based on the applicant's credible testimony and the resolution of any conflict in the medical evidence in favor of the opinions of Dr. Prince, it is found that the applicant does have work restrictions attributable to the injury . . .

The ALJ awarded Rios disability benefits of $663.29 per month and made no substantive changes to the Award on review.

¶9      This court has jurisdiction over the timely request for review by Jani King and Liberty Mutual (Petitioners) pursuant to Arizona Revised Statutes (A.R.S.) sections 12–120.21(A)(2) and 23–951(A) (2019), and Arizona Rules of Procedure for Special Actions 10.[1]

**DISCUSSION**

¶10      Petitioners argue the ALJ erred by concluding that Rios had "work restrictions from a psychiatric standpoint" because the evidence did not support that conclusion, most notably because the expert witnesses did not state or suggest any work restrictions attributable to the psychiatric condition. Rios argues that the record supports the Award because it is sufficient to show a loss of earning capacity. He relies on the favorable

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

credibility findings given by the ALJ to his testimony and on the resolution of any conflicts in the medical evidence in favor of Dr. Prince.

¶11    In reviewing findings and awards of the ICA, this court defers to the ALJ's factual findings, but reviews questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270 ¶ 14 (App. 2003). This court considers "the evidence in the light most favorable to upholding the award." *Danial v. Indus. Comm'n*, 246 Ariz. 81, 83 ¶ 11 (App. 2019).

¶12    The stipulation by the parties substantially defines the basis for the Award and the resolution of the arguments here. Rather than deciding whether there had been loss of earning capacity, which would include consideration of multiple factors like those listed in A.R.S. § 23-1044(D), the stipulation reframed the issue as providing Rios would be entitled to a monthly benefit of $663.29 if the ALJ "find[s] that he does have work restrictions attributable to the injury." Petitioners argue that Rios was required (but failed) to show that a doctor "specifically placed any particular work restrictions on Mr. Rios from a psychiatric standpoint." But that is not what the stipulation required.

¶13    The stipulation, instead, provides Rios is entitled to the specified monthly benefit if, after the industrial injury, he had *any* restrictions in his work abilities compared to his work abilities before the industrial injury. It is undisputed Dr. Prince opined, to a reasonable degree of medical certainty, that Rios' diminished functionality as a part of his major depressive recurrent condition with psychotic features "would impair his functioning at work to a certain extent." Indeed, Petitioners concede that Rios' symptoms "would impair his functioning at work to an extent." Dr. Prince also attributed recurrence of work limitations as a result of the behavioral health issues to the 2012 industrial injury.

¶14    It is this functional impairment interfering with Rios' ability to work as a result of the industrial injury that, under the stipulation, resulted in his entitlement to the $663.29 monthly benefit. It is this functional impairment that also prompted the ALJ, after assessing credibility, to conclude that she was "resolving any conflict in the medical evidence" in favor of Dr. Prince.

¶15    If the parties had not entered into the stipulation, the analysis would be different. And if the stipulation had different terms (such as requiring that the work restrictions be imposed by a medical expert, as opposed to being evident as a result of the industrial injury), the analysis

also would be different. But the task before the ALJ was to apply the terms of the parties' stipulation as written to the facts presented.

## CONCLUSION

¶16 Given the terms of the stipulation and viewing the evidence in the light most favorable to upholding the Award, sufficient evidence supports the ALJ's findings. Accordingly, the Award is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA