NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FRANCISCO GUZMAN, *Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

VOICE & DATA CABLE SPEC DBA
VOICE & DATA CABLE SPEC, *Respondent Employer,*

HARTFORD INSURANCE CO OF THE MIDWEST, *Respondent Carrier.*

No. 1 CA-IC 21-0029
FILED 3-31-2022

Special Action - Industrial Commission
ICA Claim No. 20201-290645
Carrier Claim No. Y2EC29147
The Honorable J. Matthew Powell, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Cruz & Associates, Phoenix
By Charles Mark Wilmer, Jr.
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Norton & Brozina PC, Phoenix
By Christopher S. Norton
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**F U R U Y A**, Judge:

¶1   Under Arizona workers' compensation law, employers are not required to cover independent contractors who work for them. *Danial v. Indus. Comm'n*, 246 Ariz. 81, 83, ¶ 12 (App. 2019). Petitioner Francisco Guzman seeks review of an Industrial Commission of Arizona ("ICA") Award finding he was an independent contractor, not an employee, of Respondent Voice & Data Cable Specialists (VDCS). We affirm the award.

**FACTS AND PROCEDURAL HISTORY**

¶2   We view the facts in a light most favorable to sustaining the ICA Award. *See Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544–45 (1981). Richard Colaw owns and operates two businesses out of his home. ITS Design Solutions provides consulting and design for cable systems for the integrated installation of phone lines, internet access, alarm systems, and telecommunications. VDCS installs cable systems designed by ITS for hotels, motels, and other businesses. VDCS keeps tools, materials, and supplies in a storage area on the property. VDCS hires installers for specific jobs through written independent contractor agreements. While Colaw maintains office space used for the businesses in his residence, and a bookkeeper who works in that space, no customers come to the home, and there are no signs or other exterior indications that the home houses the businesses.

¶3   Since 2016, Colaw had hired Guzman to work sporadically as an installer for the businesses on a job-by-job basis. Guzman has experience in construction work but is not a cable system designer. Guzman testified he worked specific installation jobs, such as a job in 2019 at the Camelback Inn in Scottsdale, Arizona. For that job, Guzman signed a written "Independent Contractor Agreement" stating he would provide installation services for $20 per hour. Although Colaw testified VDCS was the installation arm of the business, the 2019 installation contract was with ITS and not VDCS. Nevertheless, Guzman performed "Communications,

Cable, and Hardware Installation Services" according to the agreement, was paid by the hour, and completed the job in September 2019.

¶4        Between September 2019 and February 2020, Guzman worked construction-related jobs for other employers. In February 2020, Colaw asked Guzman to paint the exterior of his house for $18 per hour. They made a verbal agreement and Guzman began the job. Guzman was free to use any tools or materials VDCS had in its storage area, and he did so. He also used his own tools. Colaw provided the paint and "consumables" for the job. Colaw asked Guzman not to start working until after 9 a.m. each day so people living in the house would not be disturbed early in the morning. Otherwise, Colaw did not direct the painting process. Payment for Guzman's services was based on timesheets Guzman turned in, wherein he wrote down the hours worked each day. Colaw paid Guzman using VDCS corporate checks but did not create an IRS W-4 tax form. Colaw withheld the first portion of Guzman's payments to repay a small personal loan from Colaw enabling Guzman to buy tires for his van. In addition, Guzman was free to look for other jobs during the painting job, and Colaw wrote him a reference letter.

¶5        While working at the house-painting job in April 2020, Guzman fell from a ladder and broke both legs. He filed a workers' compensation claim that Respondent Hartford Insurance Co. of the Midwest denied. He requested a hearing and both Guzman and Colaw testified about the employment. Guzman testified he was working for VDCS when he was injured. Colaw testified VDCS does not use its own workers to paint the exteriors of homes or commercial buildings. The administrative law judge ("ALJ") found Colaw's testimony more credible where it differed from Guzman's and found Guzman was working as an independent contractor. Thus, the ALJ concluded the claim was not covered. After a timely request for review, the ALJ affirmed his conclusion. Guzman timely petitioned this court for review, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(2) and 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

¶6        In reviewing an ICA Award, we defer to the ALJ's factual findings but review questions of law de novo. *See Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We independently determine whether an injured worker is an employee, or an independent contractor based on the totality of facts and circumstances. *Central Mgmt. Co. v. Indus. Comm'n*, 162 Ariz. 187, 189 (App. 1989).

¶7        Guzman argues the ALJ's conclusion that Guzman was an independent contractor was not supported by the facts and the law. We disagree.

¶8        If Guzman was employed as an independent contractor, he is not an "employee" for workers' compensation law purposes. *Danial*, 246 Ariz. at 83, ¶ 12. Section 23-902(B) and (C) state:

> (B) When an employer procures work to be done for the employer by a contractor over whose work the employer retains supervision or control, and the work is a part or process in the trade or business of the employer, then the contractors and the contractor's employees, and any subcontractor and the subcontractor's employees, are, within the meaning of this section, employees of the original employer. For the purposes of this subsection, "part or process in the trade or business of the employer" means a particular work activity that in the context of an ongoing and integral business process is regular, ordinary or routine in the operation of the business or is routinely done through the business' own employees.

> (C) A person engaged in work for a business, and who while so engaged is independent of that business in the execution of the work and not subject to the rule or control of the business for which the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to that business only in effecting a result in accordance with that business design, is an independent contractor.

¶9        "The distinction between an employee and independent contractor . . . rests on the extent of control the employer may exercise over the details of the work." *Central Mgmt. Co.*, 162 Ariz. at 189. Thus, we consider "the totality of the facts and circumstances of each case, examining various indicia of control." *Anton v. Indus. Comm'n*, 141 Ariz. 566, 571 (App. 1984) (citing *Home Ins. Co. v. Indus. Comm'n,* 123 Ariz. 348, 350 (1979)). In *Home Insurance Co.,* the Arizona Supreme Court set out the factors for determining indicia of control:

> [T]he duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation

insurance; the extent to which the employer may exercise control over the details of the work[;] and whether the work was performed in the usual and regular course of the employer's business.

123 Ariz. at 350. The court further noted that none of these indicia alone is conclusive. *Id.*

**¶10**         We conclude that the ALJ's determination that Guzman was an independent contractor under A.R.S. § 23-902 is consistent with both the facts determined by the ALJ and the relevant law. Considering the seven factors above, Guzman was hired for a specific job and not as an at-will employee. That factor bears toward an independent contractor relationship. *See Wagner v. State*, 242 Ariz. 95, 97–98, ¶¶ 9–10 (App. 2017) (supporting an employee relationship where the parties "entered into an exclusive 3-year contract"); *Central Mgmt. Co.*, 162 Ariz. at 189–192 (supporting an employee relationship where worker's position with employer "was permanent" so long as she abided by company standards/rules). Second, Guzman was paid on an hourly basis. That factor goes toward an employee relationship. *See Swichtenberg v. Brimer*, 171 Ariz. 77, 79, 82–83 (App. 1991) (supporting an employee relationship where worker was "paid by the hour, not by the job"); *Molnar v. Indus. Comm'n*, 141 Ariz. 530, 531–32 (App. 1984) (supporting an employee relationship where worker "was paid $10 per hour when he began to work for Westco"). Third, Guzman was free to use VDCS's equipment but furnished his own equipment or tools if VDCS did not have what he needed. This factor indicates an independent contractor relationship. *See Swichtenberg*, 171 Ariz. at 79, 82–83 (supporting an employee relationship where employer "furnished all [of the worker's] equipment and supplies"). The fourth and fifth factors are not material because the nature of the job was minor, and additional workers were not necessary to complete it. Control of the project was almost wholly left to Guzman. His only direction was to start after 9 a.m. Moreover, residential painting was not in the usual and regular course of VDCS' business, even though it is part of the broad business of construction. These last two factors indicate an independent contractor relationship here. *See Danial*, 246 Ariz. at 83–84, ¶¶ 14–16 (supporting an independent contractor finding where airport taxicab driver "controll[ed] his own hours and driving schedule"); *Swichtenberg*, 171 Ariz. at 79–80, 82–83 (supporting an employee relationship where employer gave worker "specific directions concerning the very job on which [the worker] was injured" and, where employer's "business as manager of four homeowners associations" included painting responsibilities, the worker—charged with painting townhouses— performed such duties in the usual and regular course of the employer's

business). Thus, looking at the whole relationship, we agree with the ALJ's determination that Guzman was an independent contractor and not an employee. As such, Guzman is not eligible for workers' compensation benefits.

¶11        Guzman further argues the ALJ erred by failing to make findings as to his qualification under the statutory definition of employee, or VDCS' status under the definition of employer. But because the ALJ's determination of Guzman's status as an independent contractor is itself determinative, we need not, and do not, further address this argument.

## CONCLUSION

¶12        We affirm the award.



AMY M. WOOD • Clerk of the Court
FILED:   AA