NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FERNANDO GARDEA SOLIS (Deceased) by Mayra Trevizo for herself as surviving spouse and for minor children*, **, ***, *Petitioners*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

DSL LOGISTICS, LLC*, ROPERS TRANSPORT, LLC**, DUNCAN & SON LINES***, *Respondent Employers*,

NATIONAL INTERSTATE INSURANCE CO***, *Respondent Insurance Carrier*,

SPECIAL FUND DIVISION/NO INSURANCE SECTION*, ** *Respondent Party in Interest*.

No. 1 CA-IC 21-0046
FILED 8-25-2022

Special Action - Industrial Commission
ICA Claim No. 20180-960090*
No. 20180-960091**
No. 20193-250053***
Carrier Claim No. 1313324***
The Honorable Rachel C. Morgan, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Joel F. Friedman PLLC, Phoenix
By Joel F. Friedman
*Counsel for Petitioners*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent Industrial Commission*

Norton & Brozina PC, Phoenix
By Rachel Parise Brozina
*Counsel for Respondent Duncan & Son Lines, Inc., and Respondent Carrier*

Baumann, Doyle, Paytas & Bernstein, PLLC, Phoenix
By Gary T. Doyle
*Counsel for Respondent DSL Logistics, LLC*

Legal Division
Industrial Commission of Arizona, Phoenix
By Scott J. Cooley
*Counsel for Respondent Party in Interest*

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Michael Brown joined.

**P E R K I N S**, Judge:

¶1          The surviving spouse and minor children of Fernando Gardea Solis bring this statutory special action to review the Industrial Commission of Arizona's finding that their death benefits claim is non-compensable. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2          Solis was the sole owner of Ropers Transport, LLC ("Ropers") when he died. He spent many years driving a semi-truck to haul cargo containers between southern California ports and Arizona. Before 2016, he worked as an employee-driver for Duncan & Sons Lines, Inc. ("Duncan"),

2

an interstate cargo carrier that transported goods for DSL Logistics, LLC ("DSL"). Duncan and DSL shared office space and had some corporate officers and owners in common.

¶3        DSL is a freight broker that arranges cargo transportation with about 900 motor carriers. DSL owns no trucks but it sets pickup times, drop-off times, and locations with its customers and then hires carriers to transport the cargo. DSL collects payments from customers and then pays its carriers upon delivery.

¶4        In 2016, Solis purchased a semi-truck from Duncan and formed Ropers. Duncan financed the loan for Solis's truck. Solis contracted with DSL to transport goods on the same route that Solis drove for Duncan. Their written agreement ("Agreement") identified DSL as a federally licensed freight broker and Ropers as a federally licensed motor carrier. The Agreement states DSL *may* offer shipments for Ropers to haul, but Ropers must use its own equipment. DSL did not have to offer work to Solis, but if it did, Solis agreed to accept a minimum of three transports per week, per truck. The Agreement did not prohibit Solis from working with other brokers or shippers.

¶5        The Agreement required Ropers to obtain any licenses or certificates needed to operate as a motor carrier. Ropers also had to maintain its own general liability insurance, motor vehicle insurance, trailer insurance, cargo insurance, and workers' compensation insurance. Ropers invoiced DSL on a fee-per-transport basis. The Agreement identifies Ropers as an independent contractor with "exclusive control and direction of the work [Ropers] perform[ed] pursuant to this Agreement," including supervision of any employees Ropers hired. Ropers could not assign others to perform the transportation services or transport any other property while transporting a shipment for DSL. The parties agreed to a one-year term with automatic renewal, unless either party provided a thirty-day notice to cancel.

¶6        DSL issued a federal income tax form 1099 to Ropers, which had its own tax identification number, to account for payments from 2016 and 2017. Solis used funds from the DSL invoices to make payments on his semi-truck loan to Duncan.

¶7        In April 2017, Solis died in an accident while hauling cargo on his familiar route. His widow and dependent children filed unsuccessful workers' compensation death benefits claims. They protested their claims' denial, and the Industrial Commission held a hearing before an

3

administrative law judge ("ALJ"). The ALJ's sole inquiry was whether DSL or Duncan, or both, were Solis's employers under workers' compensation law when the accident occurred.

**¶8**　　　　The ALJ heard testimony from Solis's widow and DSL's Vice President of Operations and reviewed other evidence. The ALJ concluded Ropers was an independent contractor and thus Solis was not an employee subject to DSL's workers' compensation coverage. After an administrative review affirmed the award, this appeal followed.

## DISCUSSION

**¶9**　　　　We address only whether Solis was an independent contractor or an employee under A.R.S. § 23-902, a question of law we review *de novo. See Special Fund Div./No Ins. Section v. Indus. Comm'n*, 172 Ariz. 319, 321 (App. 1992). We view the evidence in the light most favorable to upholding the award. *Munoz v. Indus. Comm'n*, 234 Ariz. 145, 147, ¶ 2 (App. 2014).

**¶10**　　　　Dependents of an employee killed in the course of his employment are entitled to compensation. A.R.S. § 23-1021. "A factual predicate for recovery, however, is the existence of an employer-employee relationship. An independent contractor is not an employee for purposes of workers' compensation law." *Danial v. Indus. Comm'n*, 246 Ariz. 81, 83, ¶ 12 (App. 2019). Rather, an independent contractor is:

> A person engaged in work for a business, and who while so engaged is independent of that business in the execution of the work and not subject to the rule or control of the business for which the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to that business only in effecting a result in accordance with that business design, is an independent contractor.

A.R.S. § 23-902(C).

**¶11**　　　　In determining whether a claimant is an employee or independent contractor, we focus on whether the prospective employer had a right to control the details of the claimant's work. *Danial*, 246 Ariz. at 83, ¶ 13. We consider the totality of the circumstances of the parties' business relationship and look to "indicia of control," such as "the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's

4

compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business." *Id.* at 83–84, ¶¶ 13–14 (citation omitted).

**¶12**        The record shows neither DSL nor Duncan exerted control over Solis's work. Solis worked on a job-by-job basis, and he did not receive a salary or hourly wage. Solis used his own semi-truck, burned his own fuel, and relied on his own insurance. DSL had no authority to hire and/or fire employees working under Solis's direction. DSL also exercised no control over how Solis completed his jobs. As the freight broker, DSL merely dictated the pickup and dropoff times based on its agreements with customers.

**¶13**        Solis's surviving family members admit DSL did not exert sufficient control over Solis's work to establish an employer-employee relationship. But they contend that DSL and Duncan, as "alter ego entities," combined to control Solis's work for him to be considered their employee. While the companies shared business offices and corporate officers, they did not exercise any "combined" authority over Solis's work. Solis may have depended on Duncan and DSL to operate Ropers because Duncan sold and financed Solis's semi-truck and DSL offered hauling opportunities. But these arrangements do not rise to the level of control inherent to an employer-employee relationship. We agree with the ALJ's finding that Solis was an independent contractor.

**CONCLUSION**

**¶14**        We affirm the award.



AMY M. WOOD • Clerk of the Court
FILED:    AA