IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SHEILA DOUGLAS,
*Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent,*

MONTECITO POST ACUTE CARE & REHABILITATION,
*Respondent Employer*,

SAFETY NATIONAL CASUALTY CORP,
*Respondent Carrier*.

No. 1 CA-IC 24-0034

FILED 12-30-2025

Special Action - Industrial Commission
ICA Claim No. 20213640419
Carrier Claim No. 21871452
The Honorable Rachel C. Morgan, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Law Office of Eric C. Awerkamp, Mesa
By Eric C. Awerkamp
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Moeller Law Office, Tucson
By M. Ted Moeller, Trevor Hansen
*Counsel for Respondent Employer and Insurance Carrier*

---

**OPINION**

---

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Anni Hill Foster and Judge Paul J. McMurdie joined.

---

**B R O W N**, Judge:

¶1        This is a special action review of an Industrial Commission of Arizona ("ICA") award setting an average monthly wage for an injured worker who had recently returned to full-time employment status when she was injured.   The issue before us is whether the wage base the administrative law judge ("ALJ") adopted realistically reflected the worker's monthly earning capacity.   Because the ALJ's selected timeframe failed to account for what the injured worker was reasonably capable of earning, we set aside the award.

**BACKGROUND**

¶2        The relevant facts are undisputed.   Starting in 2011, Sheila Douglas worked as a nurse, primarily for Sunland Health Associates LLC, dba Montecito Post Acute Care & Rehabilitation ("Montecito"), a facility that provides rehabilitative services to patients with medical and behavioral health conditions.   For most of her employment with Montecito, Douglas worked full-time as a licensed practical nurse ("LPN").   But in August 2020, she returned to nursing school and changed her employment status with Montecito to "part-time or as needed."   After completing her studies, she passed her examination in September 2021 and then obtained licensure as a registered nurse ("RN").   Effective October 30, Montecito classified Douglas "as a full-time employee."

¶3        The number of hours full-time nurses worked per week at Montecito fluctuated.  It used a staffing system that set a certain number of hours and allowed nurses to work extra shifts if they wanted.   The minimum hour requirement for full-time employment was 32 hours per week, but nurses could work more than the minimum, including overtime.

¶4	In November 2021, Douglas worked decreased hours, with Montecito's permission, because she planned and attended funerals for her father and his two friends, who had died due to the COVID pandemic. On December 1, she started working full-time hours. On December 17, Douglas was injured when a patient became violent and kicked her in the head while she was trying to help him.

¶5	Payroll records show that from January 2021 through October 2021, while she was on part-time status, Douglas worked about 200 hours. In November 2021, Douglas worked just under 80 hours, and in the first two weeks in December, she worked 74.80 hours. She intended to work more than 40 hours per week after that but for the injury. Her promotion to RN in late October 2021 came with an increase in her hourly pay rate from $32.96 to $36.

¶6	Montecito and the respondent carrier accepted Douglas' workers' compensation claim. They calculated her average monthly wage at the time of injury by taking her total earnings from January 1, 2021, through December 15, 2021 ($13,483.35), and dividing it by the number of days in that period (349) to obtain a daily amount earned. That daily amount ($38.63) was multiplied by a factor representing the number of days in the month during that time (30.416), resulting in an average monthly wage of $1,174.97. The ICA issued a Notice of Average Monthly Wage approving that calculation. Douglas requested a hearing, asserting her average monthly wage should be the 2021 statutory maximum because she intended to work at least 40 hours per week at the RN pay rate when she was injured.

¶7	At the subsequent evidentiary hearing, the ALJ heard testimony from Sharon Martin, Montecito's Human Resources Manager, who explained that on October 30, 2021, Douglas was promoted from LPN to RN, increasing her pay rate to $36 per hour. Douglas was also reclassified from part-time to full-time, meaning she was expected to work at least 32 hours per week. Martin further testified that RNs typically worked 45–50 hours per week and that Douglas would be offered those hours if she wanted them.

¶8	In establishing the average monthly wage under A.R.S. § 23-1041(A), the ALJ quoted the calculation analysis asserted by Douglas' counsel:

> [Douglas'] last pay stub before the injury showed ramp up
> earnings of $2,792.80. This pay level would have continued

3

> to increase, but for the injury. However, even at this pay level,
> . . . Douglas was over the statutory maximum. As such, the
> applicant's average monthly wage should be established at
> the statutory maximum of $5,030.33 based on the calculation
> below: $2,792.80/15 days = $186.19[.] $186.19 x 30.416
> = $5,663.16. Based on the pay period prior, the applicant's
> average monthly wage should be set at $5,030.33[.]

Noting that the ICA "has discretion to select the most appropriate formula," the ALJ summarily concluded that "applicant's earnings of $13,483.35 over the total time period from January 1, 2021, to December 15, 2021, for an average monthly wage of $1,174.97 as determined by the carrier and adopted by the ICA constitutes the most reasonable basis upon which to establish her average monthly wage." The ALJ affirmed the award on review and Douglas filed this statutory special action challenging the award. We have jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rules of Procedure for Special Actions 3, 11.

## DISCUSSION

¶9        In reviewing a workers' compensation award, we defer to the ALJ's factual findings, *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003), but we review de novo questions of law, *Ibarra v. Indus. Comm'n*, 245 Ariz. 171, 174, ¶ 12 (App. 2018). Because the material facts here are undisputed, we apply the law to those facts without deferring to the ALJ. As the injured worker, Douglas has the burden of proving her average monthly wage. *See Zapien v. Indus. Comm'n*, 12 Ariz. App. 334, 336 (1970).

¶10        Under Arizona's workers' compensation scheme, an injured worker receives disability benefits for loss of earning capacity based on the worker's "average monthly wage at the time of injury." A.R.S. § 23-1041(A).[1] "Monthly wage" is defined as the "average wage paid during and over the month in which the employee is . . . injured." A.R.S. § 23-1041(G). Thus, a worker's average monthly wage is presumed to be

---

[1]        At oral argument before this court, counsel for both parties agreed that Douglas' average monthly wage should be determined under § 23-1041(A), rather than § 23-1041(B) (stating that if the employee has not been "continuously employed" for 30 days immediately before the injury, the average monthly wage is determined based on "the previous wage of the injured employee or of other employees" working in similar employment).

the amount earned by the worker during the 30 days before the injury. *Kennecott Copper Corp. v. Indus. Comm'n*, 61 Ariz. 382, 385 (1944). However, as explained by our supreme court, "the wage base should realistically reflect a claimant's actual monthly earning capacity." *Lowry v. Indus. Comm'n*, 195 Ariz. 398, 400 (1999); *see also* 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 93.01(1)(g) (2025) ("The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity."). Thus, if a worker's earnings during the 30-day period do not appropriately represent the worker's true wage at the time of injury, the ALJ has the discretion to use a different timeframe to achieve the statutory goal of assessing a reasonable representation of the worker's average monthly wage. *See Swift Transp. v. Indus. Comm'n*, 189 Ariz. 10, 11 (App. 1996).

¶11 Douglas was injured on December 17, 2021, so the presumptive 30-day wage period is November 17 to December 17, 2021. But Montecito and its carrier used essentially the entire 2021 calendar year (eleven and a half months) as the wage base. The ICA, and later the ALJ, approved and adopted that calculation without any explanation why they deviated from the 30-day presumption. And because Douglas does not argue the presumptive 30-day period should apply here, we presume the parties agree that period does not fairly represent her earning capacity when she was injured.

¶12 Instead, Douglas contends that relying on the entire 2021 calendar year does not accurately represent her earning capacity at the time of injury because it includes ten months during which she worked as a part-time employee and received a lower pay rate as an LPN. She contrasts her award with the circumstances in *Swift*, where a truck driver was employed for about two months as a probationary trainee on a weekly salary. *Swift*, 189 Ariz. at 10. After completing his training, his status changed to regular employment, and he was paid per mile. *Id.* He worked in this manner for one week before he was injured. *Id.* The ALJ calculated the driver's average monthly wage by using only the week of regular employment to determine an average daily wage, noting that the pay increase was not routine but merely a recognition of his promotion as a regular driver. *Id.* at 11. On appeal, the employer argued the ALJ "was required" to use the driver's "actual earnings for the thirty-day period" before his injury. *Id.* This court disagreed, concluding that the driver's training salary "was properly excluded because it present[ed] a distorted basis upon which to make a determination of future earning capacity." *Id.* at 12–13.

5

**¶13**        Montecito argues the ALJ's decision in this case was a reasonable exercise of discretion because the timeframe reflected what Douglas had "actually earned for her labor." But using the calendar year preceding her injury did not accurately capture her average monthly wage under A.R.S. § 23-1041(A). Similar to the driver in *Swift*, Douglas had recently seen a change in her employment status when she changed from working as an LPN to an RN and had only been working a full-time schedule for two weeks before her injury. *Swift*, 189 Ariz. at 10. The changes in her employment affected both her hourly rate and the number of hours she could expect to work. Accordingly, as in *Swift*, using the salary Douglas earned through a time she was earning less and working fewer hours "would grossly distort [her] 'actual earning capacity.'" *See id.* at 12; Larson, § 93.01(1)(g) (explaining that unless future earning capacity is recognized as the guiding principle when dealing with wage calculation issues, "there may be a temptation to lapse into the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of th[e] claimant's own earnings in some arbitrary past period has been used as a wage basis").

**¶14**        Even so, Montecito argues the ALJ had the discretion to disregard Douglas' full-time designation and was not required to assume Douglas would continue to work full-time hours. We recognize that an ALJ has broad discretion in resolving factual disputes. *See Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968) (recognizing the ALJ's duty to resolve all evidentiary conflicts in the evidence and draw warranted inferences, which will not be disturbed unless the conclusion is unreasonable). But there are no factual disputes here. Thus, we apply the undisputed facts to the law governing average monthly wage determinations. The suggestion that Douglas would not continue to work full-time hours is speculative. The only evidence presented to the ALJ confirmed that since 2011, other than the time she spent attending nursing school to become an RN, Douglas had worked full-time. And Montecito has not directed us to any evidence suggesting Douglas' full-time status would change after she started her RN position.

**¶15**        Montecito's argument also fails to recognize that the amount Douglas had earned in the calendar year before her injury did not accurately reflect the position (and corresponding pay) she had when the injury occurred. Nor does Montecito explain how that period of time appropriately reflected Douglas' average wage paid during and over the month in which she was injured. *See* A.R.S. § 23-1041(G). Thus, Montecito has shown no evidence in the record demonstrating that the ALJ's chosen timeframe for calculating Douglas' average monthly wage reasonably

reflects her actual monthly earning capacity. *See Lowry*, 195 Ariz. at 400 ("[T]he wage base should realistically reflect a claimant's actual monthly earning capacity."); *Franco v. Indus. Comm'n*, 130 Ariz. 37, 40 (App. 1981) (recognizing the purpose of workers' compensation "is to reimburse injured workers for loss of earning capacity, not loss of earnings").

¶16        Douglas urges us to remand this case and direct the ALJ to calculate the average monthly wage "with the decision of the court in *Swift* being instructive." We decline to do so, given that our authority is limited to either affirming or setting aside the award. *See* A.R.S. § 23-951(D); *Garcia v. Indus. Comm'n*, 26 Ariz. App. 313, 315 (1976).

## CONCLUSION

¶17        Because the timeframe the ALJ applied to calculate Douglas' pre-injury average monthly wage does not properly reflect her actual earning capacity at the time she was injured, we set aside the award.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR